## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>BUSINESS CAPITAL LLC<br><br>      Defendant. | Case No. 2:25-cv-06344 |

**DEFENDANT BUSINESS CAPITAL LLC'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT**
**[ORAL ARGUMENT REQUESTED]**

**Table of Contents**

I.      Oral Argument Requested ........................................................................................1

II.     Introduction and Background .................................................................................1

III.    Legal Standard ........................................................................................................3

IV.     Argument: Weingrad's Section 227(c) Claims Fail
        Because He Didn't Receive Any "Telephone Calls" ............................................4

        A.      Section 227(c) Does Not Provide a
                Private Action for Text Messages ............................................................4

        B.      Any FCC Ruling to the Contrary is Invalid.............................................7

V.      Conclusion.............................................................................................................11

## I.      Oral Argument Requested

Defendant respectfully requests oral argument on this Motion. The question presented—whether 47 U.S.C. § 227(c)(5)'s private right of action for receipt of more than one "telephone call" extends to text messages—is a purely legal issue that is dispositive here and recurring in TCPA litigation nationwide. Courts addressing that question have reached different conclusions, particularly in the wake of *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), and *McLaughlin Chiropractic Assocs. v. McKesson Corp.*, 606 U.S. 146 (2025), which require courts to apply ordinary principles of statutory interpretation without deferring to agency views on statutory meaning. *See infra* § IV. Because the issue is outcome-determinative, has generated conflicting authority, and affects a growing number of TCPA cases invoking § 227(c)(5), oral argument would assist the Court in resolving the Motion, which has implications beyond this case. Defendant therefore respectfully requests oral argument pursuant to Judge Slomsky's Policies and Procedures.

## II.     Introduction and Background

Plaintiff brings this putative class action under the Telephone Consumer Protection Act ("TCPA"). He alleges that eleven text messages Defendant Business Capital LLC ("Business Capital") sent him on July 17, 2025, violated the statute's Do-Not-Call and Caller-Identification provisions. *See* Compl. ¶¶ 27, 62–72. Business Capital is a direct lender that helps small businesses nationwide obtain funding through a streamlined online application process. *See About Us*, businesscapital.com/about-us (last visited Mar. 31, 2026). Plaintiff's complaint shows that the messages he allegedly received discussed "working capital for your business" and clearly identified the sender as "Business Capital LLC." Compl. ¶ 31. Based on those alleged text messages, Plaintiff seeks to represent two nationwide classes. *Id*. ¶ 46.

1

Both claims fail at the threshold because both depend on 47 U.S.C. § 227(c)(5), which contains a private right of action only for a person who has received "more than one *telephone call* within any 12-month period." 47 U.S.C. § 227(c)(5) (emphasis added); *see also* Compl. ¶¶ 16–17, 62–72 (citing 47 U.S.C. § 227(c)(5)). But Plaintiff does not allege that Business Capital placed any telephone call to him; he alleges only receiving text messages. *Id.* ¶ 27.

Numerous courts across the country have properly recognized that "under a plain reading, Section 227(c)(5) of the TCPA does not regulate text messages." *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025); *see also Stockdale v. Skymount Prop. Grp., LLC,* 2026 WL 591842, at *2 (N.D. Ohio Mar. 3, 2026) ("[T]his Court joins several others in holding that the term 'telephone call' as used in Section 227(c)(5) of the TCPA does not encompass 'text messages.'"); *Davis v. CVS Pharmacy, Inc.,* 797 F. Supp. 3d 1270, 1275 (N.D. Fla. 2025) (granting motion to dismiss § 227(c) claims because plaintiff only alleged receiving text messages, and "because text messages are not telephone calls, he has not stated a claim."); *Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (granting motion to dismiss, finding "the statutory text here is clear, and a text message is not a 'telephone call.'"); *Radvansky v. 1-800-FLOWERS.COM*, 2026 WL 456919, at *4 (N.D. Ga. Feb. 17, 2026) (same); *Richards v. Fashion Nova LLC*, 2026 WL 847568, at *5 (S.D. Ind. Mar. 26, 2026) (same); *Richards v. Shein Distribution Corp.*, 2026 WL 847584, at *5 (S.D. Ind. Mar. 26, 2026) (same); *James v. Smarter Contact, Inc.*, 2026 WL 879244, at *5 (M.D. Fla. Mar. 31, 2026) (same); *Radvansky v. Kendo Holdings, Inc.*, Case No. 23-cv-00214 (N.D. Ga. Feb. 12, 2026) (same).

That conclusion follows from the statute's text, structure, and history, as well as from the Supreme Court's recent clarification that courts must independently determine a statute's meaning rather than defer to an agency's contrary view. Section 227(c)(5) creates a private right of action

only for receipt of more than one "telephone call," and the ordinary meaning of that term at the time of enactment did not encompass text messages. The surrounding provisions of § 227 reinforce that reading, because Congress used broader language elsewhere when it wished to regulate additional forms of communication and later amended the statute to distinguish expressly between "call[s]" and "text message[s]." Nor can any FCC interpretation alter that result. The Supreme Court has made clear that courts must exercise their own independent judgment in determining a statute's meaning and may not defer to an agency interpretation that expands the statute beyond its best reading. *McLaughlin Chiropractic Assocs.*, 606 U.S. at 157–59; *Loper Bright*, 603 U.S. at 400–02. The agency may issue implementing regulations, but it cannot enlarge the private cause of action Congress chose to create, and this Court must apply the statute as written.

These defects are dispositive of both claims, and the Complaint should be dismissed with prejudice.

## III.    Legal Standard

Dismissal under Rule 12(b)(6) is appropriate where a complaint fails to state a legally cognizable claim or lacks sufficient factual allegations to support one. *Henry v. Essex Cnty.*, 113 F.4th 355, 360 (3d Cir. 2024) (citing *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). To survive a motion to dismiss, a complaint must contain factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim has "facial plausibility" when the plaintiff pleads factual content allowing the court to reasonably infer that the defendant is liable for the alleged misconduct. *Id.*

While courts must accept well-pleaded factual allegations as true, they need not accept "labels and conclusions," "[t]hreadbare recitals of the elements of a cause of action," or legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678;

3

*Boring v. Google*, 362 F. App'x 273, 278 (3d Cir. 2010) ("[C]onclusory allegations of liability will not suffice."). Dismissal with prejudice is appropriate when, as here, amendment would be futile. *See Rothman v. Cabana Series IV Tr.*, 2024 WL 1405393, at *2 (3d Cir. Apr. 2, 2024).

**IV.     Argument: Weingrad's Section 227(c) Claims Fail Because He Didn't Receive Any "Telephone Calls"**

**A.     Section 227(c) Does Not Provide a Private Action for Text Messages**

The section of the TCPA at issue in this case creates a private right of action for "a person who has received more than one ***telephone call*** within any 12-month period." 47 U.S.C. § 227(c)(5) (emphasis added). Congress did not define "telephone call" in the TCPA, but in 1991, when the statute was enacted, the term was universally understood to mean voice-based communications, as anyone alive at that time could attest. *See Perrin v. United States*, 444 U.S. 37, 42 (1979) (courts interpret statutory terms according to their "ordinary, contemporary, common meaning").

Indeed, text messaging, as a technology, did not exist at that time, and the first text message was not sent until December 1992. *See Blackstone*, 792 F. Supp. 3d at 899 (noting "[t]he world's very first text message [was] sent Dec. 3, 1992," and "was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages.") (*quoting* Alex Fitzpatrick, How Text Messages Are Being Killed and Replaced, TIME (Dec. 3, 2014), *available at* https://time.com/3612277/text-message-history-future/) (last visited Mar. 31, 2026). When Congress enacted the TCPA in 1991, the ordinary meaning of "call" was "'the act of calling on the telephone' and 'telephone' [was defined as] 'an instrument for reproducing *sounds* at a distance . . . one in which sound is converted into electrical impulses for transmission by wire." *Stockdale*, 2026 WL 591842, at *3 (*quoting Merriam-Webster New Collegiate Dictionary* (9th ed. 1990), *available at* https://archive.org/details/webstersninthne000merr/mode/2up (last visited

Mar. 31, 2026)). Thus, it is "[c]ertainly" the case that "no ordinary person would think of a text message as a '*telephone* call' . . . at the time of the provision's enactment." *CVS Pharmacy*, 797 F. Supp. 3d at 1273; *see also Stockdale*, 2026 WL 591842, at *3 ("Under these definitions, 'telephone call' could not include modern-day text messages because text messages do not use a telephone to reproduce sounds at a distance.").

The Supreme Court has warned against judicial efforts to retroactively "modernize" the TCPA by stretching terms beyond their original meaning. In *Facebook v. Duguid*, the Court unanimously reversed an expansive interpretation of the TCPA, holding that courts may not rewrite the statute to keep up with changing technology. The same logic applies here. 592 U.S. 395 (2021). If "telephone call" meant "text message," then any communication capable of being transmitted via the phone—emails, app alerts, social media notifications—could arguably fall within the statute. Congress chose not to go that far by using a term with a fixed contemporaneous meaning in Section 227(c)—instead of a *category term* like "all communications"[1]—which also contains other limitations on the private cause of action not present in other sections of the TCPA.

Numerous recent decisions confirm that conclusion and dismiss claims under § 227(c) based on text messages, finding that the statute plainly does not apply to them. *See Blackstone*, 792 F. Supp. 3d at 899 ("Text messaging was not an available technology in 1991, and thus 'telephone call' would not have included text messages or SMS messages."); *Stockdale*, 2026 WL 591842, at *3 ("[T]he plain meaning of 'telephone call' at the time Congress enacted the TCPA . . . could not include modern-day text messages because text messages do not use a

---

[1] Another example of a category term is "vehicle." That would include gas cars and EVs, even if the latter didn't exist at the time of enactment of the relevant statute. Unlike a broad category term like vehicle, "telephone call" had a specific, limited meaning at the time of enactment—and continues to have that same meaning today, requiring transmission of sound.

telephone to reproduce sounds at a distance."); *Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) ("the statutory text here is clear, and a text message is not a 'telephone call.'"); *1-800-FLOWERS.COM*, 2026 WL 456919, at *4 (granting a motion to dismiss and noting "[t]he statutory text here is clear that only telephone calls are actionable under § 227(c)(5), not text messages."); *Fashion Nova LLC*, 2026 WL 847568, at *2  ("A plain reading of § 227(c)(5) therefore supports Defendant's position that under § 227(c)(5), 'telephone call' does not mean text messages."); *Shein Distrib. Corp.*, 2026 WL 847584, at *5 (same); *Kendo Holdings, Inc.*, 23-cv-00214 (granting a motion for judgment on the pleadings, finding § 227(c)(5)'s "statutory text here is clear, and a text message is not a 'telephone call.'") (quotation omitted). "This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case." *CVS Pharmacy*, 797 F. Supp. 3d at 1270.

This reading is further confirmed by the statute's structure and Congress's subsequent amendments. In Section 227(a)(4), for instance, Congress used the phrase "telephone call or message," but in Section 227(c)(5) it used only "telephone call," signaling that it intended to exclude other forms of communication, such as text messages, from the private right of action. *See CVS Pharmacy*, 797 F. Supp. 3d at 1274 ("courts should presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters") (cleaned up). Likewise, Congress amended § 227(e) in 2018 to address spoofing and caller ID manipulation and expressly covered both "a call made using a voice service" and "a text message sent using a text messaging service." 47 U.S.C. § 227(e)(8)(A)–(B). It then defined "text message" in a manner that excludes real-time, two-way voice communications—i.e., a telephone call. *Id*. § 227(e)(8)(C). Had Congress intended to include text messages within Section 227(c)'s private right of action, it could have done so then, just as several state legislatures have expressly amended their statutes to do

6

because they recognized "telephone calls" do not include texts. *See* 2019 N.C. Sess. Laws 188 (H.B. 724) (amending N.C. Gen. Stat. § 75-101(9) to define "telephone solicitation" as a "voice *or text* communication") (emphasis added); Fla. Stat. § 501.059(1)(j) (2023) (amending "telephonic sales call" to include calls and texts); Tex. Bus. & Com. Code § 302.001 (as amended in 2025) (same).

The statute's surrounding provisions reinforce the same conclusion. Congress did not use one catchall term throughout Section 227. Instead, it varied its language depending on the conduct it meant to regulate. Section 227(b)(1)(A), for example, creates a cause of action for "any call" made with specified technology or prerecorded content to specified lines. 47 U.S.C. § 227(b)(1)(A), (b)(3); *see also id*. § 227(b)(1)(B) (prohibiting "any telephone call" with specified technology). Congress also regulated fax advertising separately, prohibiting "an unsolicited advertisement" "to a telephone facsimile machine" even though fax transmissions are sent over telephone lines. *Id*. § 227(b)(1)(C). By contrast, the private do-not-call remedy in § 227(c)(5) is triggered only by receipt of "more than one *telephone* call[.]" *Id*. § 227(c)(5). Congress knew how to draft a broader prohibition when it intended to do so, but did not do so in § 227(c)(5), underscoring its intent. The Court should give effect to the narrower wording.

Because Weingrad alleges only that he received text messages, not telephone calls, he cannot invoke § 227(c)(5), and his claims fail as a matter of law.

### B.   Any FCC Ruling to the Contrary is Invalid

This conclusion is further compelled by *McLaughlin Chiropractic Assocs. v. McKesson*, which requires this Court to independently interpret and apply the plain text of the TCPA and not defer to FCC interpretations. 606 U.S. 146, 155 (2025). Before that decision, the FCC informally and cursorily opined that its regulations under Section 227(c) cover texts, though it is unclear

whether that was intentional, as that statement was made in passing and based on the FCC's more thorough analysis of the different language in Section 227(b). *See* Targeting & Eliminating Unlawful Text Messages, 89 Fed. Reg. 5098, 5101 (Jan. 26, 2024) (treating texts as "calls" in passing); *Blackstone*, 792 F. Supp. 3d at 901 ("[T]he FCC's interpretation of call to include text messages is a complicated one, and potentially does not even apply to Section 227(c)(5).").

Even assuming the FCC's aside was intentional, its opinion is irrelevant. That's because such an opinion would exceed its statutory authority. Congress granted the FCC authority under Section 227(b)(2) and (c)(2) to adopt implementing *regulations* and grant *exemptions* regarding "telephone solicitations," a term that includes both "telephone call[s]" and "messages," 47 U.S.C. § 227(a)(4). But Congress confined the private right of action it created in Section 227(c)(5) only to "telephone calls." What matters for this Motion is not whether Business Capital violated the TCPA's implementing regulations (it didn't), but whether Weingrad has a private cause of action under Section 227(c)(5). He does not.

Nor is it odd that Congress hasn't extended the private right of action under § 227(c)(5) to text messages. *See supra* § III.A. Congress could "reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter." *CVS Pharmacy,* 797 F. Supp. 3d at 1274. And regulating callers "could serve the purpose of protecting consumers even if Congress created no private right of action at all." *Id.* Indeed, Congress frequently grants broader enforcement authority to agencies than the private causes of action it grants to the public. As a parallel example, the FTC's Telemarketing Sales Rule (which is analogous to the TCPA in many ways) sweeps broadly at the regulatory level but authorizes private suits only for a narrow band of conduct—"or practice"—where violations cause "actual damages of $50,000 or more" to the plaintiff. 15 U.S.C.

§ 6104(a). The CAN-SPAM Act is similar: Congress empowered the FTC, state attorneys general, and other public agencies to enforce the Act, while creating only a "limited private right of action" for a narrow subset of plaintiffs. *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1048 (9th Cir. 2009) (citing 15 U.S.C. § 7706).

In any event, under the Supreme Court's 2025 and 2024 decisions in *McLaughlin* and *Loper Bright*, courts must apply the statute's plain meaning, not defer to contrary FCC interpretations of its own regulations, which use different language than the private cause of action at issue in this case. *See McLaughlin*, 606 U.S. at 155, 168–69; *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 388–89 (2024). Both in 1991 and today, the ordinary meaning of "telephone call" is a voice call, and the FCC cannot rewrite the TCPA to say otherwise.

For decades, lower courts often erroneously deferred to interpretations by agencies like the FCC, even when they were counterintuitive and changed from administration to administration. Most courts followed the FCC's expansive view of "autodialer," for example. That ended when, as noted above, the Supreme Court unanimously reversed that definition, holding it "must interpret what Congress wrote," and "outdated" as "perhaps the TCPA itself[] may be, that is no justification for eschewing the best reading." *Facebook*, 592 U.S. at 397, 409. The few circuit court decisions on direct APA challenges to the FCC's TCPA interpretations—which was generally the only way to challenge an FCC interpretation before *McLaughlin*—are in accord. There, the circuit courts reversed far more thoughtful FCC opinions as contrary to the plain text of the TCPA. *See, e.g.*, *Ins. Mktg. Coal. v. FCC*, 127 F.4th 303, 315 (11th Cir. 2025) ("We thus reject the FCC's one-to-one consent restriction" as inconsistent with the statutory definition of "prior express consent"); *ACA Int'l v. FCC*, 885 F.3d 687, 695 (D.C. Cir. 2018) ("[W]e set aside the Commission's explanation of which devices qualify as an ATDS, as well as its understanding of when a caller

9

violates the Act by calling a wireless number previously held by a consenting party but reassigned to a person who has not given consent.").

Now, through *McLaughlin*, the Supreme Court has confirmed that this Court must conduct that same analysis when raised defensively in litigation, a task formerly reserved for direct APA challenges. *McLaughlin*, 606 U.S. at 157–59 ("[T]he default rule is that district courts in enforcement proceedings may conclude that an agency's interpretation of a statute is incorrect"). That is what the Fifth Circuit just recently did, when it made short order the FCC's interpretation of the TCPA's phrase "prior express consent." *Bradford v. Sovereign Pest Control of TX, Inc.*, 2026 WL 520620, at *3 (5th Cir. Feb. 25, 2026). In just three pages, the Fifth Circuit rejected the FCC interpretation of that term that has prevailed for the last 14 years, stating plainly that the TCPA means what it says: if a consumer has given "express consent" to be contacted, there is no TCPA claim. *Id*. The consent does not have to be in writing or contain magic language, as the FCC had maintained for one-and-a-half decades. *Id.* at *2. Post *McLaughlin* and *Loper Bright*, it is that simple. *Id.* at *2–3.

Here, deferring to the FCC's "interpretation" and expanding Section 227(c)(5) to create liability for texts would go even further than the FCC's interpretation of "express consent." It would enlarge the private cause of action Congress created by replacing "telephone call[s]" with a broader category of communications—thus "reading into the TCPA something that is not there[.]" *Blackstone*, 792 F. Supp. 3d at 901. *McLaughlin* and *Loper Bright* forbid that result. *See id.*; *see also CVS Pharmacy,* 797 F. Supp. 3d at 1274 ("[T]he court's role is not to look beyond clear language to ascertain Congress's purpose."); *Stockdale*, 2026 WL 591842, at *2 (explaining that, after *McLaughlin* and *Loper Bright*, the district court must "independently—and without any special deference to an agency interpretation—determine the statute's meaning"). Whatever policy

10

arguments might favor extending § 227(c)(5) to text messages, "it is for Congress to correct—not the courts." *Stockdale*, 2026 WL 591842, at *4. Section 227(c)(5) provides a private cause of action for "telephone call[s]," not text messages.

## V.    Conclusion

For the foregoing reasons, the Court should grant Defendants' motion to dismiss and dismiss the Complaint with prejudice.

DATED:  April 1, 2026

Respectfully submitted,

*E. Keith Emanuel*
Ryan D. Watstein (*pro hac vice* forthcoming)
E. Keith Emanuel (admitted *pro hac vice*)
Matthew B. Peters (*pro hac vice* forthcoming)
WATSTEIN TEREPKA LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 882-2394
ryan@wtlaw.com
kemanuel@wtlaw.com
mpeters@wtlaw.com

**McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP**
Matthew A. Lipman, Esquire
mlipman@mdmc-law.com
1617 JFK Boulevard, Suite 1500
Philadelphia, PA 19103
Telephone: 215-557-2900
Fax: (215) 557-2990

*Counsel for Defendant*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 1, 2026, I caused to be electronically filed a true and correct copy of the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

<u>/s/ E. Keith Emanuel</u>
E. Keith Emanuel

*Counsel for Defendant*

12