**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LEON WEINGRAD, individually and on behalf of all others similarly situated, | : | Case No.: 2:25-cv-06344 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| BUSINESS CAPITAL LLC | : | |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFF'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS**

**Introduction**

A 1991 law that bars vehicles from a park applies equally to Cybertrucks and to sedans, even though the former didn't exist at the time. So, too, here: The Telephone Consumer Protection Act prohibits sending text messages to phone numbers on the national Do Not Call List, just as it prohibits traditional voice calls.

Of course, text messaging didn't exist when the TCPA was passed in 1991, so Congress didn't have texts specifically in mind. But it is no matter: As both courts and the FCC have long recognized, the plain meaning of the word "call" in the TCPA encompasses any "communication used primarily between telephones," regardless of whether that "call" is communicated by "voice" or "text message." *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119, 1123–24 (9th Cir. 2026) (quoting *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)); *see* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). The TCPA's Do Not Call List rules therefore apply to text messages, and private individuals may enforce those rules in court. *See, e.g.*, *Esquivel v. Mona Lee, Inc.*, No. 25 Civ. 00607, 2025 WL 3275607, at *2–3 (S.D. Cal. Nov. 24, 2025); *Mujahid v. Newity, LLC*, No. 25 Civ. 8012, 2025 WL 3140725, at *2–3 (N.D. Ill. Nov. 10, 2025); *Wilson v. Medvidi*, No. 25 Civ. 03996, 2025 WL 2856295, at *2–4 (N.D. Cal. Oct. 7, 2025); *Wilson v. Skopos Fin., LLC*, No. 25 Civ. 00376, 2025 WL 2029274, at *4–5 (D. Or. Jul. 21, 2025).

The structure and purpose of the TCPA's Do Not Call List provisions confirm that interpretation. The Do Not Call List exists "to protect residential telephone subscribers' privacy rights"—which are invaded by text messages no less than by voice calls. 47 U.S.C. § 227(c)(1); *see Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1008–09 (N.D. Ill. 2010). The statute directs the FCC to prohibit "telephone solicitations" to listed numbers, a term that is defined by the statute to include any "call or message … which is transmitted to any person"

1

with a commercial purpose—broadly inclusive language that encompasses text messages even more clearly than the word "call" does standing alone. 47 U.S.C. § 227(a)(4); *see Medvidi*, 2025 WL 2856295, at *3; *Mujahid*, 2025 WL 3140725, at *2. And, anyway, the statute's Do Not Call List provisions expressly delegate "flexibility" to "fill up the details" to the FCC. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024); *see* 47 U.S.C. § 227(c)(3)(A), (E). So any doubt on this question should be resolved in favor of deference to the agency's longstanding reasonable judgment. *See Skopos Fin.*, 2025 WL 2029274, at *4.

Defendant Business Capital's motion to dismiss argues otherwise, insisting that because text messages didn't exist when the TCPA became law, the TCPA cannot cover texts. Business Capital's incorrect intuition also animates the handful of recent district court decisions that have adopted Business Capital's reading. That's not, however, how statutory interpretation works. Courts look to a statute's ordinary "meaning at the time of … adoption" to interpret the law, not "modern intuition." *New Prime, Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). And although "every statute's *meaning* is fixed at the time of enactment," there is nothing odd about old text finding "new *applications*" as times change. *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018).

Every Court in the Third Circuit to address this issue, including Judges Henry, Judge Roberts Perez, and, just today, Judge Murphy, in this District, have text messages as "calls" for TCPA purposes without relying on the FCC. *See Newell v. Childrens Dental Health Assocs, LLC*, No. 2:25-cv-05238, ECF No. 25 (E.D. Pa. Apr. 6, 2026); *Cole v. C/T Install Am., LLC*, 2026 U.S. Dist. LEXIS 63254 (E.D. Pa. Mar. 23, 2026); *Newell v. RxLink Inc.*, Civil Action No. 2:25-cv-4270, ECF No. 43 (E.D. Pa. Mar. 12, 2026). Indeed, earlier last week, Judge Martini held the same in *Rubin v. Staples, Inc.,* 2026 U.S. Dist. LEXIS 70359 (D. NJ. March 31, 2026) holding, in part: "the majority of courts also consider § 2[2]7(c)(5)'s protection against "calls" to

include text messages….Consistent with these cases, the Court concludes that "telephone call" can encompass text messages for purposes of § 227(c)(5) and 47 C.F.R. § 64.1200(d)." No Court in the Third Circuit has held the opposite.

The Defendant's motion to dismiss should be denied.

### Background

Section 227(c) of the Telephone Consumer Protection Act empowers the FCC to decide whether to create a national Do Not Call List and to determine the rules that will govern it. *See* 47 U.S.C. § 227(c)(1)–(4).

The guiding purpose of a Do Not Call List is "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *Id.* § 227(c)(1). The key operative term there is "telephone solicitations," which are defined in the TCPA as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods or services, which is transmitted to any person." *Id.* § 227(a)(4). As one court recently observed, that definition is "more concerned with the purpose of the telephone communications [that are prohibited] than the form in which those communications are transmitted." *Medvidi*, 2025 WL 2856295, at *3; see, e.g.*, *Hulce v. Zipongo Inc.*, 132 F.4th 493, 497–500 (7th Cir. 2025) (Do Not Call List liability turned on whether a text message had the requisite commercial purpose).[1]

The statute grants the FCC broad discretion to determine the rules governing the Do Not Call List. The statute expressly empowers the FCC to make rules "that the Commission determines are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E). And it directs the FCC to evaluate alternative approaches based on open-ended

---

[1] Unless otherwise specified, all internal quotation marks, alterations, and citations are omitted from quotations throughout.

criteria such as their "effectiveness in protecting … privacy rights" and their "other advantages and disadvantages." *Id.* § 227(c)(1)(A).

Congress directed that any Do Not Call List regulations that the FCC establishes must meet certain statutory criteria. *See id.* § 227(c)(3)–(4). For example, the rules require phone companies to notify their subscribers about the Do Not Call List and specify how frequently the list will be updated. *Id.* § 227(c)(3)(B), (c)(3)(I). And, as relevant here, the statute specifies that the FCC's rules must "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber" on the national Do Not Call List. *Id.* § 227(c)(3)(F).

Finally, section 227(c)(5) provides for private enforcement of the FCC's Do Not Call List rules. That provision grants an express private right of action to any "person who has received more than one telephone call within any 12-month period … in violation of the regulations." 47 U.S.C. § 227(c)(5). That is "a straightforward provision designed to achieve a straightforward result"—to enable "each person to protect his own personal rights" under the Do Not Call List rules. *Krakauer v. Dish Network, LLC*, 925 F.3d 643, 650 (4th Cir. 2019).

The FCC's implementing regulations for the Do Not Call List include 47 C.F.R. § 64.1200(c)(2), which generally prohibits "any telephone solicitation to … [a] residential telephone subscriber who has registered his or her telephone number" on the Do Not Call List. The FCC has also determined in a series of orders and in a formal regulation that this rule applies to "calls or text messages to wireless telephone numbers." 47 C.F.R. § 64.1200(e); *see* 18 FCC Rcd. 14014, 14115 ¶ 165 (July 3, 2003); 30 FCC Rcd. 7961, 8020 ¶¶ 115–16 (July 10, 2015); *Hernandez*, 2018 WL 6830220, at *1 ¶ 3; 88 Fed. Reg. 20800, 20802 ¶ 6 (Apr. 7, 2023); 38 FCC

Rcd. 12247, 12256–57 ¶ 26 (Dec. 18, 2023).[2]

Plaintiff Leon Weingrad is the subscriber and customary user of a cellular telephone number with a 267 area code, which he uses exclusively for personal, residential, and household purposes and not for business (ECF No. 1 ¶¶ 19–23). Plaintiff's number has been listed on the National Do Not Call Registry for more than one year prior to the events at issue (ECF No. 1 ¶ 20). Despite that registration, and despite Plaintiff never providing his number to Defendant or consenting to receive solicitations, Defendant sent multiple telemarketing text message calls to Plaintiff's number, including at least eleven messages on or about July 17, 2025 (ECF No. 1 ¶ 27). These messages promoted Defendant's financing services and constituted telemarketing under the TCPA. (ECF No. 1 ¶¶ 38–39).

The messages were unwanted and nonconsensual. Plaintiff had no prior relationship with Defendant, never requested information from Defendant, and had no interest in Defendant's services (ECF No. 1 ¶¶ 25–26, 35). The texts were part of a telemarketing campaign and were sent without Plaintiff's prior express invitation or permission (ECF No. 1 ¶¶ 34–37).

## Argument

Business Capital contends that a single use of the word "call" in section 227(c)(5)'s private right of action means that the Do Not Call List rules cannot apply to text messages. That's incorrect, as multiple Courts, both within and outside the Third Circuit, have held. *Wilson v. Easy Spirit, LLC*, No. 3:25-CV-112 (SFR), 2026 U.S. Dist. LEXIS 69059, at *13 (D. Conn. Mar. 31, 2026) (holding the word "call, in th[e § 227(c)] context, means to 'get or try to get into

---

[2] The FCC's interpretation of the word "call" was first discussed in the context of the TCPA's nearby prohibitions on autodialed calls, found in section 227(b). *See* 18 FCC Rcd. at 14115 ¶ 165. But the FCC has since clarified that it applies to section 227(c), too. *See* 38 FCC Rcd. at 12256–57 ¶ 26.

5

communication' using a telephone. A text message is sent using a cellular telephone to 'get or try to get into communication' with another person"); *Rubin v. Staples, Inc.*, No. 2:2545515 (WJM), 2026 U.S. Dist. LEXIS 70359, at *17 (D.N.J. Mar. 31, 2026) ("[T]he Court concludes that "telephone call" can encompass text messages for purposes of § 227(c)(5)"); *Rabbitt v. Rohrman Midwest Motors*, No. 25 C 11312, 2026 U.S. Dist. LEXIS 66266, at *8 (N.D. Ill. Mar. 27, 2026) ("Based on the court's independent examination of the TCPA, it agrees with the FCC that § 227(c)(5) applies to text messages."); *Cole v. C/T Install Am., LLC*, No. 25-3531, 2026 U.S. Dist. LEXIS 63254 (E.D. Pa. Mar. 23, 2026) ("The structure of the entire TCPA leads to the conclusion that §227(c) does include text messages."); *McGonigle v. Teleflora LLC*, No. 1:25-cv-807, ECF 66 (E.D. Va. Mar. 13, 2026) (denying motion to dismiss premised on DNCR not encompassing text message calls); *McGonigle v. Shopperschoice.Com*, No. 25-152-SDD-RLB, 2026 U.S. Dist. LEXIS 30157, at *13 (M.D. La. Feb. 13, 2026) ("The Court finds that [] 227(c)(5) applies to cellphone text messages."); *Hernandez v. Bedford Dental*, No. 25 CV 6787, 2026 U.S. Dist. LEXIS 23208, at *3 (N.D. Ill. Feb. 4, 2026) ("[The court] declines to hold that the TCPA does not apply to text messages."); *Alvarez v. Fiesta Nissan*, 2026 U.S. Dist. LEXIS 14155, at *10 (S.D. Tex. Jan. 26, 2026) ("[P]lain-language reading suggests that to send a text message is to 'try to get or to get into communication by telephone"); *Duron v. Kings Capital Holding*, 2026 U.S. Dist. LEXIS 6340, at *12 (W.D. Tex. Jan. 13, 2026) ("[I]nterpreting § 227(c) to include text messages is consistent with numerous district court decisions."); *Wilson v. Better Mortg. Corp.*, 2025 U.S. Dist. LEXIS 251694, at *19 (S.D.N.Y. Dec. 5, 2025) ("The [DNCR] statute's text and context thus show that Congress, in enacting § 227(c), was focused on protecting subscribers from telephone solicitations, not on any one form of such solicitations."); *Dilanyan v. Hugo Boss Fashions*, No. 2:25-CV-05093-JLS-BFM, 2025 U.S. Dist. LEXIS 254358, at *8 (C.D. Cal. Dec. 3, 2025)

6

(concluding "a text message is a 'call'" under § 227(c)); *McGonigle v. Office Depot*, No. 25-80069, 2025 U.S. Dist. LEXIS 231061, at *6 (S.D. Fla. Nov. 25, 2025) ("[A] text message is a call for the purpose of the TCPA"); *Esquivel v. Mona Lee*, No. 3:25-cv-00607-H-BLM, 2025 U.S. Dist. LEXIS 230841, at *8 (S.D. Cal. Nov. 24, 2025) (denying motion to dismiss finding § 227(c) applies to text messages); *Mujahid v. Newity*, No. 25 C 8012, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025) (DNCR provision applies to text message calls); *Evers v. CampaignSidekick, LLC*, No. 24 CV 11067, 2025 U.S. Dist. LEXIS 201112, at *9 (N.D. Ill. Oct. 10, 2025) ("[A] text message is also a 'call' for the purpose of Evers's claim under § 227(c)(5)"); *Wilson v. MEDVIDI*, 2025 U.S. Dist. LEXIS 198827, at *9 (N.D. Cal. Oct. 7, 2025) ("[N]othing in the text, structure, or purpose of the TCPA suggests [a] distinction between written and oral communications"); *Bosley v. A Bradley Hosp.*, No. 25-CV-22336, 2025 U.S. Dist. LEXIS 183986, at *12 (S.D. Fla. Sep. 18, 2025) ("[A] text message constitutes a 'call' under the TCPA"); *Watkins v. EyeBuyDirect, Inc.*, No. 1:25-CV-538-RP, 2025 U.S. Dist. LEXIS 167479, at *6 (W.D. Tex. Aug. 28, 2025) ("A telephone solicitation can be a call or text message."); *Wilson v. Skopos Fin.*, No. 6:25-CV-00376-MC, 2025 U.S. Dist. LEXIS 138638, at *12 (D. Or. July 21, 2025) ("[U]nsolicited text messages invade the privacy and disturb the solitude of their recipients" and are "within the purview of the DNC Registry's protections."); *Wilson v. Hard Eight Nutrition*, 804 F. Supp. 3d 1141, 1151 (D. Or. 2025) (applying DNCR provision to text messages); *Hudson v. Palm Beach Tan*, No. 1:23CV486(WO)(JEP), 2024 U.S. Dist. LEXIS 165676, at *16-17 (M.D.N.C. Aug. 12, 2024) ("[T]he statutory text … support[s] the conclusion that text messages can establish the basis for a claim under § 227(c)(5).").

Courts in more than thirteen districts and the only circuit court to directly address the issue after *Loper Bright*, the Ninth Circuit, have held the DNCR provision covers text messages. *See*

7

*Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. Jan. 13, 2026) (reaffirming text messages are "calls" post *Jones*). The Supreme Court has also weighed in on the issue in the context of the TCPA's robocalls provision. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'"), as has the Third Circuit *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 117 n.3 (3d Cir. 2018) ("under the TCPA, that term ["call"] encompasses text messages."); *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013) (holding the TCPA applies to both "voice calls" and "text messages," and noting that a "text message" is a "call").

As courts and the FCC have both long and recently recognized, the statute's ordinary meaning, structure, and purpose refute that argument. The word "call" as used in the TCPA refers to any attempt to communicate by telephone, so the FCC may prohibit telemarketing text message calls to numbers on the Do Not Call List. And Business Capital's arguments for its restrictive interpretation all fail. The company goes about interpreting the word "call" in section 227(c)(5) all wrong, appearing to invent statutory terms to support its arguments, and assigning "call" a meaning that is at odds with the rest of the statute in multiple ways, as *three* judges in this District, and every judge to have considered the issue in the Third Circuit have held, including with respect to the *very same arguments raised by the very same defense counsel here.*

Moreover, because section 227(c) is structured as an express delegation of discretionary authority to the FCC, any doubt about the answer here simply means that Congress intended the agency's reasonable judgment to control.

I.    **The Do Not Call List provisions in TCPA section 227(c) authorize the FCC to prohibit text messages.**

A.  **The plain meaning of the term "telephone call" includes text messages**

8

The starting point is the statute's text, which confirms that "call" includes text messages. To interpret a statutory term, courts look to the ordinary meaning of the word near in time to the statute's enactment, including by looking at contemporaneous dictionaries. *See e.g. Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning. Therefore, we look to the ordinary meaning of the term . . . at the time Congress enacted the statute . . . . " (citation omitted)).

Courts have long recognized that the word "call" in the TCPA refers to any attempt to communicate by telephone, including text messages. That's because the contemporaneous "plain and ordinary meaning in this context" of "the statutory term 'call'" is "to communicat[e] with or an attempt to get in communication with a person by telephone." *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*, 569 F.3d at 953–54 & n.3 and *Webster's Third New International Dictionary* (1981 ed.)).

This basic definition of the word "call," which is the relevant one given the context and the word's pairing with "telephone" in section 227(c)(5), appears in many dictionaries from around the time of the TCPA's passage. *See, e.g.*, *Random House Webster's College Dictionary* (1991) ("to communicate or try to communicate with by telephone"); *Oxford English Dictionary* (2d ed.1989) ("a summons or communication by telephone"). "The contemporary definition of 'telephone call' was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone." *Wilson v. Better Mortgage Corp.*, No. 25 Civ. 5503, 2025 WL 3493815, *5 (S.D.N.Y. Dec. 5, 2025).

In fact, other contemporary dictionaries of the era explicitly treat "telephone call" and "call" as synonymous. For instance, the Oxford Encyclopedic English Dictionary defines a

9

"telephone call" as a "call," and defines "call" as "to communicate or converse with by telephone or radio." *See* "call," Oxford Encyclopedic English Dictionary 209 (2d ed. 1991). Under any of these definitions, a "telephone call" is simply a communication made by telephone, which plainly includes text messages sent from one telephone to another. It indicates no preference for voice communication. To "telephone" someone is "to "send (a message) by telephone." *Id.* 1484. These definitions reinforce the understanding that, even in 1991, a "telephone call" need only transmit a "message," not include a vocal component. Fax machines, pagers, teletype machines, and TTY devices are all examples of technologies available in 1991 that transmitted text-based "messages" under that definition.

And courts have long recognized that these definitions, including the definition identified in *Satterfield*, any attempt to communicate with someone by telephone, is the meaning of "telephone call" that Congress would have intended in 1991, when the TCPA was enacted. *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 W.V./Ky./Oh.*, 708 F.3d 737, 742 (6th Cir. 2013); *Better Mortgage Corp.*, 2025 WL 3493815, at *5; *Lozano*, 702 F. Supp. 2d at 1007; *Sagar v. Kelly Auto. Grp., Inc.*, No. 21 Civ. 10540, 2021 WL 5567408, at *4 (D. Mass. 2021); *Schaevitz v. Braman Hyundai, Inc.*, 437 F. Supp. 3d 1237, 1247 (S.D. Fla. 2019). Texting is, of course, a means of communicating with someone by telephone. So "text messaging plainly fits within that literal definition of a 'call,' because 'text messaging is a form of communication used primarily between telephones.'" *Howard*, 164 F.4th at 1123–24 (quoting *Satterfield*).

The established definition of "telephone call" in the TCPA therefore readily encompasses texts. Indeed, the Third, Seventh, and Ninth Circuits have said, in cases alleging violations of section 227(b), that "[t]ext messages to a cellular telephone qualify as a 'call' within the meaning of the statute." *Warciak v. Subway Rests., Inc.*, 949 F.3d 354, 356 (7th Cir. 2020); *see Howard*, 164

10

F.4th at 1123–24; *Satterfield*, 569 F.3d at 954; *Dominguez*, 894 F.3d at 117; *Gager*, 727 F.3d at 269. And, absent contrary evidence, a statutory word or phrase is presumed to bear a consistent meaning throughout a statute. *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017). So, the consensus meaning of the word "call" in section 227(b), as encompassing texts, "supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid*, 2025 WL 3140725, at *2.

The meaning of the word "call" is especially clear in the nearby autodialer provisions in section 227(b) of the original TCPA. The word "call" is used extensively in those provisions prohibiting automatic dialing technology and robocalls. Most notably, section 227(b) prohibits using autodialer or robocall technology "to make any call … to any telephone number assigned to a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). A typical paging device in the early 1990s would have displayed an incoming message as written text—usually displaying a phone number to call.[3] So the use of the word "call" in connection with pagers in section 227(b) establishes "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano*, 702 F. Supp. 2d at 1005; *see also Abbas v. Selling Source, LLC*, No. 09 Civ. 3413, 2009 WL 4884471, at *4 (N.D. Ill. 2009).

The FCC has long endorsed that interpretation of the term "telephone call." The agency determined as early as 2003 that when the TCPA says "[telephone] call," it must mean not just traditional voice calls but also modern text messages. 18 FCC Rcd. 14014, 14115 ¶ 165 (Jul. 3, 2003). As the FCC recognized then, the statutory text "encompasses both voice calls and text calls to wireless numbers." *Id.* And the FCC has consistently adhered to that position ever since. *See*

---

[3] *See, e.g.*, Paging Network, Inc., *Annual Report*, 8 (1991), https://perma.cc/W6UW-UEM2 (noting that 92 percent of the company's pagers could "transmit a numeric message such as a telephone or account number").

11

30 FCC Rcd. 7961, 8020 ¶¶ 115–16; *Hernandez*, 2018 WL 6830220, at *1 ¶ 3*;* 88 Fed. Reg. 20800, 20802 ¶ 6; 38 FCC Rcd. 12247, 12256–57 ¶ 26.

To be sure, the FCC first interpreted the word "call" to include text messages in the context of the TCPA's prohibitions on autodialed calls in section 227(b). But that is unsurprising, because the word "call" is used more extensively in that part of the statute, whereas section 227(c) mainly uses the defined term "telephone solicitation." *See Medvidi*, 2025 WL 2856295, at *3. The FCC has since confirmed in a formal regulation that its 2003 interpretation of the word "call" also applies to text messages in the Do Not Call List context of section 227, specifically. *See* 47 C.F.R. § 64.1200(e); 38 FCC Rcd. at 12256–57 ¶ 26.

If anything, even though it is only briefly discussed in the relevant order, the FCC's 2003 interpretation of the word "call" to include texts is especially helpful to understanding the word's original meaning as of 1991. *See* 18 FCC Rcd. at 14115 ¶ 165. When Congress originally drafted the TCPA, text messages were not yet mainstream. *See Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 370 (6th Cir. 2015); *Medvidi*, 2025 WL 2856295, at *2. And texting didn't achieve widespread popularity until the 2000s.[4] So the FCC's understanding of "call" in 2003 surely approximated its 1991 meaning more closely than our 2025 intuitions, which reflect a world where texting has been ubiquitous for decades. *Cf. Raimondo*, 603 U.S. at 386 ("[T]he contemporaneous construction of those who were called upon to act under the law, and were appointed to carry its provisions into effect, is entitled to very great respect.").

---

[4] *See, e.g.*, David Crystal, *Toting: The Gr8 Db8* 4 (2008), https://perma.cc/M2Q3-FH44 ("The average number of texts per GSM customer in 1995 was 0.4 per month; by the end of 2000 it was still only 35."); Meghan Keane, *Texting Overtakes Voice in Mobile Phone Usage*, Wired (Sept. 29, 2008), https://perma.cc/CB7E-EZQZ (noting that the number of text messages surpassed the number of voice calls for the first time in 2007).

Indeed, because it has been broadly understood for decades that the word "call" in the TCPA includes texts, courts have commonly treated that interpretation as obvious and uncontroversial. *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call.'"); *Warciak*, 949 F.3d at 356 ("Text messages to a cellular telephone qualify as a 'call' within the meaning of the statute."). That has remained true even after the *McLaughlin* and *Loper Bright* decisions that Business Capital says (at 11–12) should be causing a sea change.

For example, the Ninth Circuit recently revisited the same "statutory construction" question "under de novo review." *Howard*, 164 F.4th at 1123–24. And the Circuit confirmed its prior holding that a "'text message' constitutes a 'call' within the meaning of the TCPA," even without granting any deference to the FCC. *Id.* ("[I]t is clear from *Satterfield*'s substantive analysis that the conclusion would be the same even in the absence of *Chevron* deference."). The Seventh Circuit's reading also has not changed. *See Hulce v. Zipongo, Inc.*, 132 F.4th 493, 496–97 (7th Cir. 2025) (taking as a given that texts can be actionable "telephone solicitations" under section 227(c)).

So even post-*Loper Bright*, "the significant weight of case authority" supports interpreting "telephone call" to include text messages. *Better Mortg. Corp.*, 2025 WL 3493815, at *9. In sum, the FCC's conclusion that "the term 'call' includes a text message" therefore reflects "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *3. The statute's structure independently confirms this plain-meaning reading.

13

### B.  That interpretation of the word "call" aligns section 227(c)'s private right of action with its substantive provisions.

Much of Business Capital's argument focuses on the single use of the word "call" in section 227(c)(5). But reading section 227(c)(5)'s private right of action in context with the substantive Do Not Call List provisions of section 227(c) further confirms that text messages are covered.

To see why, start with the core of section 227(c)—its prohibition on "making or transmitting a *telephone solicitation* to the telephone number of any subscriber" on the Do Not Call List. 47 U.S.C. § 227(c)(3)(F). Text messages, of course, are "ma[de] or transmitt[ed]" to a "telephone number." *Id*. § 227(e)(8)(C). And it is well-established that the residential telephone "subscriber[s]" protected by the Do Not Call List include cell phone subscribers: The FCC determined that cell phone subscribers are covered when it first created the Do Not Call List rules, *see* 18 FCC Rcd. 14014, 14037–39 ¶¶ 33–36 (2003), and courts have overwhelmingly agreed with that interpretation of the statute ever since, *see, e.g.*, *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at *2 (M.D. Fla. 2025); *Cacho v. McCarthy & Kelly LLP*, 739 F. Supp. 3d 195, 203 & n.4 (S.D.N.Y. 2024) (collecting cases).

The term "telephone solicitation" also clearly encompasses text messages. The statute expressly defines a "telephone solicitation" to mean "a telephone *call or message* … which is transmitted to any person" for commercial purposes, with certain exceptions not relevant here. 47 U.S.C. § 227(a)(4) (emphasis added). A text message, no less than a voice call, can be "transmitted." *See, e.g.*, *Transmit*, *Random House Webster's College Dictionary* (1991) ("to send a signal by radio waves or by wire"). And the reference to a "call or message" covers texts even more clearly than the word "call" standing alone. As explained above, "the ordinary, contemporary, and common meaning" of the word "call" in the TCPA includes text messages.

14

*Satterfield*, 569 F.3d at 953–54 & n.3; *see supra*, Part I.A. And contemporary definitions of the word "message" do too—a message in 1991 was "[a]ny notice, word, or communication, *no matter the mode and no matter how sent*." *Message*, *Black's Law Dictionary* (6th ed. 1990), https://perma.cc/MTC3-H47K (emphasis added).[5] So "call" and "message" both describe communication with a phone, and neither differentiates between oral and written mediums.

Recently, Judge Gettleman explained the interplay of Section 227(c)(1) with Section 227(c)(5) of the TCPA in this regard in *Rabbitt v. Rohrman Midwest Motors, Inc.*, No. 25 C 11312, 2026 WL 851279, at *3 (N.D. Ill. Mar. 27, 2026) (cleaned up):

> As the court understands it, defendant's position is that no matter what regulations the FCC promulgates under its § 227(c)(1) authority, the private right of action in § 227(c)(5) applies only to "telephone call[s]." Although this argument has a literalist textual appeal, the court finds that § 227(c)(5) must be read in the context of the referenced "regulations" that are mandated by § 227(c)(1).
>
> The implication of defendant's position is that when Congress created a private right of action tied to violations of the "regulations" promulgated under § 227(c)(1), it intended the private right of action to extend only to regulations concerning "telephone call[s]," which constitute a subset of the larger set of "telephone solicitations" that Congress mandated the FCC to regulate under § 227(c)(1). But defendant offers no explanation as to why this would be the case. Of course, as defendant correctly notes, text messaging did not exist as a technology in 1991. But this technological backdrop makes defendant's reading of the statute more confusing, because it implies a Congressional intent to distinguish "telephone call[s]" (voice calls only) from "telephone solicitations" (a category including texts) in 1991, when there was no difference between these concepts. Defendant has not provided a rationale explaining why Congress would make such a distinction or provided any legislative history supporting the proposition that Congress did make this distinction.
>
> The better reading of § 227(c)(5) recognizes that it is part of a statutory scheme that provides a private right of action to individuals who are the victims of multiple violations of the regulations promulgated by the FCC under § 227(c)(1) within a 12-month period. . . . Congress directed the FCC to develop these regulations to "protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they

---

[5] *See also, e.g.*, *Message*, *Random House Webster's College Dictionary* (9th ed. 1991) ("a communication delivered *in writing*, speech, by means of signals, etc.") (emphasis added); *Message*, *Oxford English Dictionary* (2d ed. 1989) ("an oral *or written* communication sent from one person to another") (emphasis added).

15

object." § 227(c)(1). The FCC did so, promulgating numerous regulations including C.F.R. § 64.1200(e), which specifically applies C.F.R. § 64.1200(c) and (d) to text messages. When interpreting a statute, the court is tasked with acting as the faithful agent of Congress. . . . Despite its literalist textual appeal, the court cannot accept defendant's reading of § 227(c)(1) because it would undercut Congress's otherwise coherent regulatory scheme for a reason that neither defendant nor this court can articulate. Based on the court's independent examination of the TCPA, it agrees with the FCC that § 227(c)(5) applies to text messages.

Finally, the purpose of the Do Not Call List provisions further supports that interpretation. Congress's stated goal was "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c)(1). "[A] voice message or a text message are not distinguishable in terms of being an invasion of privacy." *Satterfield*, 569 F.3d at 954; *accord Howard*, 164 F.4th at 1124; *Mujahid*, 2025 WL 3140725, at *2; *Medvidi*, 2025 WL 2856295, at *3; *Skopos Fin., LLC*, 2025 WL 2029274, at *4. Indeed, nothing in the statute gives any suggestion that Congress thought "oral messages were more invasive or objectionable than written ones." *Medvidi*, 2025 WL 2856295, at *3.

### C. The Third Circuit Court of Appeals and the other Federal Courts in Pennsylvania and elsewhere in the Third Circuit that have considered this question, including multiple courts in the last month, got it right.

Consistent with the statute's text and structure, courts, particularly within the Third Circuit, have uniformly held that text messages qualify as calls under the TCPA. Defendant's position would undermine that system if text messages were excluded from § 227(c)'s protections, telemarketers could simply bypass the Registry by shifting from voice calls to texts. Luckily for consumers, the federal courts in this Circuit have gotten the analysis correct.

The Third Circuit has "held that," "[a]lthough the text of the statute refers only to 'calls,'" "under the TCPA, that term encompasses text messages." *Dominguez*, 894 F.3d at 118 n.3 (quoting *Gager*, 727 F.3d at 269 n.2). Indeed, the Third Circuit has looked to the *Satterfield*

16

decision for guidance. *See Gager*, 727 F.3d at 269 (noting "[t]he TCPA's prohibition on automated dialing applies to both voice calls and text messages" and citing *Satterfield*). As noted above, the Ninth Circuit recently reaffirmed *Satterfield's* central holding, even absent *Chevron* deference. And, consistent with that directive, district courts have applied that analysis.

On March 23, 2026, in an opinion by Judge Catherine Henry, *this Court* denied a motion to dismiss raising materially identical arguments, including that text messages are not "calls" under the TCPA. *Cole*, 2026 U.S. Dist. LEXIS 63254. In *Cole*, Judge Henry further concluded that the TCPA's structure and purpose confirm that interpretation, noting that identical statutory language in neighboring provisions has consistently been applied to text messages:

> Continuing on to examine the structure of the TCPA as a whole, I note that the Supreme Court as well as other courts have found that "calls" under § 227(b), a neighboring section of the TCPA, include text messages. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016). I also note that both §§ 227(b) and 227(c) use the same term - "telephone call." (§ 227(b) prohibits the initiation of "any telephone call to any residential telephone line" using an automated telephone system and § 227(c) protects a person who "receives more than one telephone call over a 12-month period.") As with other courts who examined the structure of the TCPA, I find that it is "strongly persuasive. . . [that] a subsection of the same statute uses identical language," *Alvarez*, 2026 U.S. Dist. LEXIS 14155, 2026 WL 202930 at *6. "The fact that the term 'call' as used in § 227(b) encompasses 'text messages,' supports the interpretation that the term 'call' as used in § 227(c) also encompasses 'text messages.'" *Mujahid v. Newity, LLC*, No. 25-8012, 2025 U.S. Dist. LEXIS 221088, 2025 WL 3140725, at *2 (N.D. Ill. Nov. 10, 2025). As further support, § 227(c) prohibits sending "telephone solicitations" to numbers on the DNC list, and the TCPA defines "telephone solicitations" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of . . . goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). The structure of the entire TCPA leads to the conclusion that § 227(c) does include text messages.

> In examining the purpose of the TCPA, I again find that it leads to the conclusion that "call" as used in § 227(c) includes text messages. "The TCPA was enacted to 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers.'" *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. June 19, 2009). Given Congress's expressly stated goal "to protect residential telephone

17

subscribers' privacy rights to avoid receiving telephone solicitations to which they object," 47 U.S.C. § 227(c)(1), "it strains belief to suggest that Congress silently determined that [ ] oral messages were more invasive or objectionable than written ones." *Wilson v. MEDVIDI Inc.*, No. 25-3996, 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *3 (N.D. Cal. Oct. 7, 2025). Congress intended the TCPA to protect the privacy of consumers from unsolicited marketing efforts, and a text message can be just as invasive as a phone call.

Lastly, I find that interpreting § 227(c) to include text messages is consistent with both the previously discussed guidance from the FCC, as well as numerous decisions from other courts on this same issue. *See Mujahid*, 2025 U.S. Dist. LEXIS 221088, 2025 WL 3140725, at *2; *Alvarez*, 2026 U.S. Dist. LEXIS 14155, 2026 WL 202930, at *4; *Wilson v. MEDVIDI Inc.*, 2025 U.S. Dist. LEXIS 198827, 2025 WL 2856295, at *3. *Wilson v. Better Mortg. Corp.*, No. 25-5503, 2025 U.S. Dist. LEXIS 251694, 2025 WL 3493815 (S.D.N.Y Dec. 5, 2025); *Mey v. Liberty Home Guard, LLC*, No. 23-281, 2026 U.S. Dist. LEXIS 739, 2026 WL 486556 (N.D. WV, Jan. 5, 2026). *But see Jones v. Blackstone Med. Servs., LLC*, 792 F.Supp.3d 894, 899 (C.D. Ill. July 21, 2025) (finding that Section 227(c) does not apply to text messages based on a plain reading of the TCPA and its implementing regulations); *Davis v. CVS Pharmacy, Inc.*, 797 F.Supp.3d 1270, 1273 (N.D. Fla. Aug. 26, 2025) (finding that the text of § 227(c) was clear and a text message was not a telephone call.); *Sayed v. Naturopathica Holistic Health, Inc.*, No. 25-847, 2025 U.S. Dist. LEXIS 209469, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (finding that Section 227(c) does not apply because "a text message is not a telephone call"); *Dilanyan v. Hugo Boss Fashions, Inc.*, No. 25-5093, 2025 U.S. Dist. LEXIS 254358, 2025 WL 3549868, at *1 (C.D. Cal. Dec. 3, 2025) (stating that the Court "reads the ordinary meaning of 'telephone call' to exclude 'text message,'" and finding that Section 227(c) does not apply); [*6] *Radvansky et al. v. 1-800-Flowers.com, Inc.*, No. 25-2811, 2026 U.S. Dist. LEXIS 32415, 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026) (stating that the "statutory text here is clear that only telephone calls are actionable under § 227(c)(5), not text messages."). I recognize that some courts have analyzed this issue and come to a different conclusion, but my interpretation is consistent with the weight of authority. Accordingly, I find that nothing in the text, structure or purpose of the TCPA suggests the barring of text messages under § 227(c) as proposed by Defendant, and I conclude that § 227(c) includes text messages within its definition of a "telephone call."

*Id.* at *1-6.

The result in *Cole* is consistent with two other decisions from the Eastern District of Pennsylvania in which the court summarily denied nearly identical motions to dismiss, including one brought by the same firm as here, and raising the same contention that text messages fall

outside the TCPA's protections. *See Childrens Dental*, No. 2:25-cv-05238, ECF No. 25; *RxLink Inc.*, No. 2:25-cv-4270, ECF No. 43. After considering full briefing and multiple rounds of supplementation, this court rejected the argument outright and allowed the claims to proceed.

The District of New Jersey has reached the same conclusion. On March 31, 2026, that Court addressed similar arguments in *Rubin v. Staples, Inc.*, Civ. No. 2:25-45515, 2026 U.S. Dist. LEXIS 70359 (D.N.J. Mar. 31, 2026). While the court ultimately dismissed certain claims on other grounds, Judge Martini expressly recognized that text messages constitute "calls" under the TCPA. The Court explained that both Supreme Court and Third Circuit precedent treat text messages as calls, and further held that the term "telephone call" in § 227(c) encompasses text messages based on the statute's text, structure, and purpose:

> The TCPA is meant to "protect residential telephone subscribers' privacy rights to avoid receiving *telephone solicitations* to which they object," 47 U.S.C. § 227(c)(1) (emphasis added). The phrase "telephone solicitation," includes "the initiation of a telephone call or *message* for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4) (emphasis added). Staples argues that § 227(c)(5)'s right of action protects recipients of at least two "telephone calls," *not* "telephone solicitations" and also maintains that because Congress defined a "text message" to exclude a "real time, two-way voice communication," *see* § 227(e)(8)(C)(iii), it recognized text messages as a distinct mode of communication that Congress did not include as "calls" in § 227(c).
>
> Subsection (e)(8)'s definitions are, however, expressly for purposes of subsection (e), which addresses prohibitions on misleading or inaccurate caller identification information. In contrast, the definition of "telephone solicitations" applies to the entire section rather than just subsection (a). Staples fails to show that Congress's definition applicable only to subsection (e) undermines Congress's express intent to protect residential telephone subscribers from unwanted "telephone solicitations," which include both calls and messages.
>
> Further, as noted above, the term "call" has been held to include text messages in § 227(b). Unlike the distinction between "residential" as used in § 227(b) to refer to a type of line, and "residential" as used in § 227(c) to describe the type of subscriber, there is no basis to ascribe different meanings to the term "call" by interpreting the same term more narrowly in § 227(c) than in § 227(b). *See Wilson*, 2025 WL 3493815, at *7 (noting "weight of [] authority concerning § 227(b)

19

strongly suggests that § 227(c)'s parallel usage of 'telephone call[s]' applies to text messages"); *Pariseau v. Built USA, LLC*, 619 F. Supp. 3d 1203, 1207 (M.D. Fla. 2022) (agreeing with "several persuasive decisions" that "telephone call" in § 227(c) includes text message because context of statutory text does not distinguish "telephone call" in subsection (c) from "telephone call" in subsection (b), which has been interpreted to include both voice call and text messages). The plain meaning of "telephone call" in 1991 was "a communication made by telephone" without distinction between an oral or vocal communication as the first text message was not sent until 1992. *Wilson*, WL 3493815, at *5. "[A]lthough modern parlance tends to distinguish between phone calls and text messages, the meaning of 'telephone call' in 1991—when the TCPA was enacted—was broad enough to encompass text messages." *Id.*

Notably, the majority of courts also consider § 2[2]7(c)(5)'s protection against "calls" to include text messages. *See Bradshaw v. CHW Group, Inc.*, 763 F. Supp. 3d 641 n.5 (D.N.J. 2025) ("Text messages are considered 'calls' for [§ 227(c)(5)] purposes."); *Champion v. Credit Pros Int'l Corp.*, No. 21-10814, 2025 WL 3452354 (D.N.J. May 15, 2023) (denying motion to dismiss § 227(c)(5) claim based on receipt of text messages); *Zelma v. Penn LLC*, No. 19-8725, 2020 WL 278763, at *6-7 (D.N.J. Jan. 17, 2020) (assuming that sending text messages to number on DNC registry was claim under § 227(c)(5)).

*Id.* at *14-17. Taken together, these recent decisions from courts within this Circuit confirm that Defendant's position is not only unsupported but has been repeatedly rejected. Courts in Pennsylvania, particularly Judges Henry and Murphy, have denied motions to dismiss presenting these same arguments, and courts in New Jersey have likewise recognized that text messages fall squarely within the TCPA's protections. This Court should do the same.

The Third Circuit and district courts within it have spoken with one voice: text messages qualify as "calls" under the TCPA and are subject to the same restrictions as voice solicitations, which apply to cell phone users. Other Courts have similarly held. *McGonigle v. Shopperschoice.com*, 2026 U.S. Dist. LEXIS 30157, at *13-14 (M.D. La. Feb. 13, 2026) ("[Consumer's] privacy rights do not depend upon whether the undesired telephone solicitations are received on a cellular phone rather than on a landline."); *Alvarez v. Fiesta Nissan*, 2026 U.S. Dist. LEXIS 14155, at *5-6 (S.D. Tex. Jan. 26, 2026) ("[C]ellular telephone users can be

20

considered 'residential telephone subscribers' under § 227(c).”); *Loudermilk v. Maelys Cosm. USA*, No. 1:24-cv-1866-AT, 2025 U.S. Dist. LEXIS 256097, at *8-9 (N.D. Ga. Dec. 11, 2025) (“[T]he protections of the TCPA['s DNCR provision] apply to cellphone users.”).

Excluding text message calls from the Registry would nullify Congress's protections, allow telemarketers to exploit the dominant form of communication today, and erode consumer trust. Because the statutory text, the FCC's consistent interpretation, and binding precedent all confirm that texts fall within the TCPA's scope, Defendant's attempt to carve out an exception must be rejected. The Registry continues to protect numbers, not loopholes.

### D. Business Capital's arguments for a narrower interpretation are unpersuasive.

Defendant's contrary arguments rely on misreadings of the statute, selective quotations, and flawed interpretive assumptions. Business Capital would have this Court interpret the Do Not Call List provisions more narrowly, insisting that the word “call” in section 227(c)(5) can only mean a voice communication and therefore the statute categorically excludes text messages. The cases it asserts show support for its arguments include *Jones v. Blackstone Medical Services*, 792 F. Supp. 3d 894 (C.D. Ill. 2025), which is currently on appeal before the Seventh Circuit, *Davis v. CVS Pharmacy, Inc.*, 797 F. Supp 3d 1270 (N.D. Fla. 2025), and *Stockdale v. Skymount Prop. Grp., LLC*, 2026 WL 591842, at *2 (N.D. Ohio Mar. 3, 2026), but none of the arguments made by Business Capital or in those cases are persuasive.

Consider first how Business Capital reads the word “call” in section 227(c)(5). It repeats a few basic arguments for reading that word as implicitly limited to voice calls. But all of them go about interpreting the statute wrong.

First, Business Capital insists that “call” cannot encompass text messages because in 1991

21

text messages did not exist. *Jones*, 792 F. Supp. 3d at 899 ("Text messaging was not an available technology in 1991")). That's not how statutory interpretation works. Of course, text messaging as it exists today didn't exist yet when the TCPA was passed in 1991. But that is no matter: The plain meaning of the word "call" in the TCPA has long been understood to encompass any attempt to communicate by phone, "regardless of whether that call is communicated by voice or text." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009); *see* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

But although "every statute's *meaning* is fixed at the time of enactment," there is nothing odd about old text finding "new *applications*" as times change. *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018). To see why the TCPA comfortably encompasses a text message as a "call," consider a 1991 law that bars "vehicles" from a park. That law applies equally to Cybertrucks and to sedans, even though the former didn't exist at the time. So, too, here: The TCPA prohibits sending text message calls to phone numbers on the national Do Not Call List, just as it prohibits traditional voice calls. To interpret a statutory term, courts look to its "ordinary meaning" "at the time Congress enacted the statute," referencing dictionaries of the era. *Perrin v. United States*, 444 U.S. 37, 42 (1979). Here, the "ordinary, contemporary, common meaning" of the word "call" in this context is "'to communicate with or try to get into communication with a person by a telephone.'" *Satterfield*, 569 F.3d at 953–54 & n.3 (quoting *Webster's Third New International Dictionary* (2002)). There's no question that a text is a "telephone" communication; of course it is. It's sent to a "telephone number," just like other transmissions that can violate the Do Not Call List rules. *See* 47 U.S.C. § 227(c)(3)(F). It plainly fits within the definition of a "call," just as a voice call does.

*Jones* and its progeny[6] get statutory interpretation wrong in two important ways. *First,* they are wrong as a textual-techno-historical matter. The courts' analysis in these cases systematically exclude the experiences and needs of deaf and hard-of-hearing individuals, who have used text-based communication for telephone calls since long before the TCPA was enacted in 1991. The *Davis* court's assertion that "no normal person refers to a text message, or thinks of a text message, as a 'call,'" is flawed in that it excludes those who have used text-based communication to make "telephone calls" long before 1991. *Davis*, 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025). This reasoning is not neutral. It is profoundly ableist. For millions of Americans who rely on TTY/TDD (teletypewriter/telecommunications device for the deaf) technology or have other hearing disabilities, text messages are not just "telephone calls," they are often the *only* way these individuals can make and receive "telephone calls."

The *Davis* court's assertion that "no normal person refers to a text message, or thinks of a text message, as a 'call'" is particularly revealing and disturbing. What is a "normal person" in this analysis? Apparently, it is someone who can hear and who uses voice communication. Deaf and hard-of-hearing individuals, who very much do think of text messages as telephone calls, are implicitly excluded from the Court's definition of "normal." This is precisely the kind of assumption that disability rights law has sought to combat for decades. Under the reasoning of *Jones*, *Davis*, and *Stockdale*, deaf individuals would have had no private right of action under § 227(c)(5), even in 1991, because they did not receive "telephone calls," they received text message calls. The fact that text messages are the only way these individuals can receive telephone calls is deemed irrelevant. They are left without protection from the very harms that Congress sought to prevent when it enacted the TCPA. By defining "telephone call" based solely

---

[6] The same faulty reasoning is embraced nearly identically in all three cases.

23

on the experience of hearing persons, i.e. involving voice communication, these decisions effectively write deaf and hard-of-hearing individuals out of the TCPA's protections entirely.

The interpretive approach adopted in *Davis*, *Jones*, and *Stockdale* is also fundamentally at odds with how courts have interpreted statutes affecting people with disabilities. Disability rights law recognizes that equal treatment requires considering the different ways in which people with disabilities interact with the world. *Davis* and its progeny fail to do so, assuming that deaf people are not "normal," a discriminatory position that represents a failure to consider the lived experiences of millions of disabled individuals. Disability rights advocates have long challenged the notion that "normal" should be equated with "non-disabled." Lisa Eichhorn, *Major Litigation Activities Regarding Major Life Activities: The Failure of the Disability Definition in the Americans with Disabilities Act of 1990*, 77 U.N.C. L. Rev. 1405, 1410 ("[T]he notion that there is something wrong or abnormal about people with disabilities is equally arbitrary."). When courts define statutory terms based solely on the experiences of hearing people, they perpetuate the marginalization of deaf and hard-of-hearing individuals.

It is therefore incorrect to assert that the original public meaning of "telephone calls" extended only to voice-based communications when the statute was enacted in 1991. It did not. The premise of *Davis* and its progeny, that text messaging via telephones did not exist in 1991, is demonstrably false when one considers the universe of text-based telephone communications that existed in 1991, and, indeed, had existed for decades before. TTY/TDD devices allow deaf and hard-of-hearing individuals to communicate over telephone lines by typing text messages that are transmitted in real-time to another TTY/TDD device or to a relay operator. This technology has been available since the 1960s, and grew out of the same technology, teletype machines, that transmitted written words using telephone lines that flashed such important news

24

as V-E Day and the Kennedy assassination. And that same line of devices has grown into fax machines, pagers, telex machines, and, yes, text messages, all using the same pair of conductors into which Alexander Graham Bell shouted "Mr. Watson, come here, I want to see you," over a century and a half ago. Leonard C. Bruno, *'Mr. Watson, Come Here'*, LIBRARY OF CONGRESS (April 1999), https://www.loc.gov/loc/lcib/9904/bell.html.

By 1991, TTY/TDD devices were widely used by the deaf community, and their use was explicitly recognized in federal telecommunications law. The Americans with Disabilities Act, enacted in 1990, just one year before the TCPA, *required* telephone companies to provide text-based telephone services to deaf and hard of hearing individuals on equal footing to "voice transmission services." 47 U.S.C. § 225. Congress was acutely aware in 1991 that "telephone calls" could be, and for millions of deaf Americans, routinely were, conducted through text-based communication. Indeed, it so recognized when it used the term "voice transmission services" to refer to the particular subset of telephone calls sent using a voice, as opposed to text-based "telecommunications relay services." And, Congress explicitly referred to such text-based services as "calls," for example, in prohibiting relay operators from "keeping records of the content of any such conversation beyond the duration of the *call*." 47 U.S.C. § 225(d)(5). Even today, text messaging is a blessing for deaf and hard-of-hearing individuals, who use such communication to more effectively communicate without needing to secure the services of a relay operator to make such "calls" each time they desire to use the telephone.

"The contemporary definition of "telephone call" was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone." *Better Mortg.*, 2025 WL 3493815 at *5. When Congress enacted the TCPA in 1991, it was legislating against the backdrop of the recently enacted ADA and the longstanding use of text-based

telephone call technology used by the deaf community and millions of individuals and businesses who had teletypewriters, pagers, and telex machines alike. Congress knew that "telephone calls" could take multiple forms, including voice calls or text messages. To interpret "call" in a way that excludes text-based communication is to ignore this historical context and, even worse, to effectively discriminate against people with disabilities. If a text "call" to a TTY device or pager can violate the TCPA, a text "call" to a cell phone can too, because it shows "that the term 'call' cannot invoke only the common usage … in which a 'call' refers to oral communication between two parties via telephone." *Lozano*, 702 F. Supp. 2d at 1004–05.

*Jones*, *Davis*, and *Stockdale* all stated that interpreting "telephone calls" to include text messages would amount to updating the statute to reflect technological changes. But it is just as clear that each of these courts abdicated their interpretative responsibility, not just in terms of a demonstrably wrong textual analysis, but also in ignoring the statutory framework and purposes of the TCPA. The TCPA's purpose was and is to protect consumers from unwanted telephone solicitations that invade their privacy and disrupt their daily lives. Unwanted text messages, particularly to individuals who are deaf and hard-of-hearing, are every bit as intrusive as unwanted voice calls, and perhaps more so, given the additional challenges implicit in living a life with hearing loss. To exclude text messages from the TCPA's protections based on a hyper-literal and historically ignorant reading of "telephone call" would thus defeat the TCPA's purpose. More troubling still, the courts' reasoning effectively punishes Congress for having been forward-thinking about disability access. At bottom, Congress chose to use the term "telephone call" rather than "voice call" or "spoken communication," in the TCPA, just as in the ADA, where it recognized text "calls." This choice should be understood as inclusive of all forms of communication sent and received by telephones, including text-based telephone "calls."

26

Second, *Davis* and its progeny got the statutory interpretation wrong by applying the wrong standard. Courts look to statutes' ordinary "meaning at the time of … adoption" to interpret them, not "modern intuition." *New Prime, Inc. v. Oliveira*, 586 U.S. 105, 114 (2019). "[T]he meaning of "telephone call" in 1991—when the TCPA was enacted—was broad enough to encompass text messages." *Better Mortg.*, 2025 WL 3493815, at *5. As the Court elucidated:

> The ordinary public meaning of "telephone call" when the TCPA was enacted in 1991 was a communication made by telephone. *See, e.g.*, Webster's Ninth New Collegiate Dictionary 197 (1989) ("the act of calling on the telephone," *i.e.*, "to get or try to get into communication by telephone," or "to deliver (a message) by telephone"); Webster's Third New International Dictionary 318 (1993) ("to communicate with or try to get into communication with a person by telephone"); *see also Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953–54 (9th Cir. 2009) (same). The contemporary definition of "telephone call" was therefore not limited to oral or vocal communications. It encompassed any communication made using a telephone.

> Text messages fit easily within that broad definition. It is undisputed that text messages are communications sent by telephone. They therefore fall within the ordinary public meaning of "telephone call" as that term was used when the TCPA was enacted.

The problem with applying modern parlance to a statute written in 1991, as *Jones*, *Davis*, and *Sayed* did, is that modern parlance can be misleading as times change. *See id.* at 114-16. As the Court explained in *Alvarez v. Fiesta Nissan, Inc.*, No. 7:25-CV-00343, 2026 WL 202930, at *4-5 (S.D. Tex. Jan. 26, 2026):

> There is nothing in the meaning of "telephone" that excludes the function of a text message. Remarkably relevant here is the classic case of *In re Erickson*, 815 F.2d 1090 (7th Cir. 1987). In that case, Judge Easterbrook considered a Wisconsin statute that made certain farming property unavailable to satisfy a civil judgment, allowing a farmer to retain "one mower" and "one hay loader." *Id.* at 1091-92. Just one problem: since the law's passage in 1935, farm technology had changed considerably. Old horse-drawn "mowers" were replaced by hydraulic, tractor-mounted haybines with hay conditioners, and "hay loaders" were replaced by automatic bailing/tying machines. *Id.* at 1092-93. And yet, the court found that the new technology was embraced by the old terms. Specifically, Judge Easterbrook wrote that a "'mower' is not limited to the thing called a mower today," because "[a] statutory word of description does not designate a particular item (e.g., "a Massey-Ferguson Mower, Model GY—2589, manufactured in 1935, serial number 3875808") but a *class of things* that share some important feature." *Id.* at 1092 (emphasis added). Indeed, "a mower with a built-in stereo cassette deck

27

would still be a 'mower', . . . because it would still cut the hay," yet with "a second function, entertainment, just as the haybine has a second function, crushing the hay." *Id.* at 1093.

The Court finds this reasoning persuasive here. Defendant seems to define "telephone call" as "a call from a telephone as existed in 1991"—that is, *only* able to communicate by voice. But if "telephone" was as absolutely defined by its sound-transmission ability as required by that reading, it would prevent an otherwise unlawful voice call using a telephone with *any* modern features from falling under the statute. Thus, voice calls from almost every modern telephone—most of which can text, among many other capabilities—would not qualify as a "telephone call" under § 227(c)(5). "[T]he fact that a statute can be applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 212 (1998) (quotation omitted). Just as a mower that both cuts and conditions hay is still a mower, a telephone which communicates texts and voice is still a telephone. And just as an aircraft built a hundred years from now such that it "could not have been dreamed today" can be embraced by 2012 statute regulating aircraft, so can a call from a telephone built in 2025—or 2125 for that matter—be embraced by a 1991 statute. Scalia & Garner, *supra*, at 16. Later meaning ascribed to words like "text message" cannot affect the Courts analysis of the original meaning of the phrase; in fact, considering the broad original meaning of "call" in 1991, society reasonably might have decided to refer to all telephone communications as "calls." That society does not today has no bearing here.

There's nothing unusual about that. "While every statute's *meaning* is fixed at the time of enactment," it is commonplace that "new *applications* may arise in light of changes in the world." *Wis. Cent. Ltd.*, 585 U.S. at 284. That's why, for example, "a 1925 statute dealing with 'news media' … appl[ies] to television." *Squillacote v. United States*, 739 F.2d 1208, 1213 (7th Cir. 1984). The same is true here. "In determining whether section 227(c) applies to text messages, the Court looks to the plain meaning of the text rather than the specific facts or technology that Congress may have had in mind in 1991 at the time of the TCPA's passage." *Medvidi*, 2025 WL 2856295, at *2. The 1991 meaning of "telephone call", which "refers to both oral and written communications," is what matters. *Id.*; *see Lozano*, 702 F. Supp. 2d at 1007.

Next, Business Capital says that in today's parlance it sounds odd to refer to a text message as a telephone call. Business Capital cites *Davis,* which found it impossible to read "call" in anything but the familiar colloquial sense, and so concluded that the "analysis begins

and ends there." *Davis*, 797 F. Supp. 3d, at *1273; *El Sayed*, 2025 WL 2997759, at *1; *see also*

*Jones*, 792 F. Supp. 3d at 899–900 (relying on a similar intuition). As explained above, that

reasoning is both historically ignorant and marginalizes the disabled community.

Regardless, as the Ninth Circuit recently confirmed, the "statutory construction" question

is not how "call" is used in modern parlance, but how "contemporary dictionaries" with the

TCPA's passage defined the "statutory term 'call.'" *Howard*, 164 F.4th at 1123–25. And "text

messages" are covered because they "plainly fit[] within" the definition of "telephone call"—in

dictionaries contemporaneous with the TCPA—as "an attempt to communicate by telephone,"

and as indicating no preference for vocal communication. *Id.* They have historically been

understood as the same, particularly within the disabled community.

*Howard*'s focus on the meaning of "call" as contemporaneous with the TCPA's passage

follows the Supreme Court's instruction that modern colloquial usage is of no consequence

because "every statute's meaning is fixed at the time of enactment." *Loper Bright*, 603 U.S. at

400. That's because, when language has evolved since a statute's enactment, current usage can

be misleading. For example, in *New Prime, Inc. v. Oliveira*, the Supreme Court explained that

the statutory term "contracts of employment" in the Federal Arbitration Act nowadays "might

call to mind only agreements between employers and employees," and thus exclude independent

contractors. 586 U.S. at 114. But that "modern intuition" did not match the "evidence of the

term's meaning at the time of the Act's adoption," which revealed that "'contract of

employment' usually meant nothing more than an agreement to perform work." *Id*. The Supreme

Court therefore held that the statutory exception at issue reached not just conventional

"employees," as modern parlance might suggest, but also modern independent contractors, as

definitions from the time of the statute's enactment showed. *See id.* at 114–16. *New Prime*

illustrates that when there's a mismatch between modern intuitions and the original meaning at the time of enactment, the latter is what controls—not (as Business Capital's cases put it) how an "ordinary person would think of a text message" today, *Davis*, 797 F. Supp. 3d at *1273.

If Congress wanted to limit *only* the private right of action in section 227(c)(5) to voice communications, implicitly doing so by using the word "call" would have been a strange way to go about it, particularly given Congress's use of terms like "voice transmission services" in other parts of the Communications Act. 47 U.S.C. § 225. After all, the word "call" *does* include textual communication in other provisions of the statute. *See supra*. If Congress intended to cabin section 227(c)(5)'s private right of action to *exclude* text messages, it wouldn't have done so by using a term that elsewhere *includes* them.

At the same time, the statute uses broad and inclusive language to describe how such a communication might be conveyed—the FCC is directed to prohibit "making *or* transmitting" a telephone solicitation to "any" listed number, and a telephone solicitation is a "call *or* message" that is "transmitted to *any* person." 47 U.S.C. § 227(a)(4), (c)(3)(F) (emphases added). Congress presumably used all that broad and disjunctive language to capture a wide range of communication mediums, including text messages. *See Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638, 643 (S.D. Tex. 2023) (rejecting an argument that "text messages are not actionable" under section 227(c) because it "fails in the face of the statutory text, which refers to 'telephone call[s] or message[s]'"). The statutory definition of "telephone solicitation" therefore "makes clear that Congress was more concerned with the purpose of the telephone communications … than the form in which those communications are transmitted." *Medvidi*, 2025 WL 2856295, at *3; *Mujahid*, 2025 WL 3140725, at *2 (same).

And reading the word "call" differently in section 227(c)(5) than in section 227(b) would

make no sense. Absent good reason to think otherwise, "identical words used in different parts of the same statute" carry "the same meaning." *Henson*, 582 U.S. at 85. As the FCC recently explained, it would be "anomalous" to give the word "call" a narrower meaning in section 227(c)(5) than it has elsewhere in the TCPA. 38 FCC Rcd. at 12257 ¶ 27. Congress would not have *excluded* text messages in section 227(c)(5) by using a term that in section 227(b) *includes* them. So "there is no reason to believe that ['call'] has a different meaning when used in the do-not-call provisions." *Dawson*, 2024 WL 4765159, at *5.

Nor does Business Capital provide any reason why "call" in section 227(b) covers text messages, but "telephone call" in section 227(c) does not. It doesn't argue that the addition of the modifier "telephone" somehow means a "telephone call" doesn't include a "text message" while just the term "call" does. How could it, as a text is clearly a "telephone" communication?

Defendant's argument also depends on redefining "telephone" itself as a device limited to sound transmission. But nothing in the TCPA, let alone most contemporary dictionaries of the time, adopts such a restrictive definition. By 1991, telephones, including pagers, TTY/TDD devices, and early digital systems, were already used to transmit non-voice information. And the statute regulates communications sent to a "telephone number," not merely audible transmissions. A text message sent to a telephone number through a telephone network is therefore a "telephone" communication regardless of whether it is conveyed by sound or text. The Court in *Taha v. Momentive Software, Inc.,* 2026 U.S. Dist. LEXIS 54376, *7-8 (C.D. Ca. March 11, 2026) squarely addressed this argument:

> Next, Defendant argues that the addition of the word "telephone" changes the textual analysis when it comes to § 227(c)(5). Reply at 4-8. However, this argument overemphasizes the significance of the word "telephone" in this context. "Telephone" is even used in the dictionary definition of "call" relied upon by the *Satterfield* and *Howard* courts. *See* Webster's Third New International Dictionary 318 (1981 ed.) ("call" means a "communicat[ion] with or

31

[an attempt] to get in communication with a person by telephone"). To argue that the addition of the word "telephone" eliminates text messages ignores the redundancy of the term inherent to this definition. Defendant argues that "[b]oth at [the inception of the TCPA] and now, 'telephone call' means only a telephonic voice transmission." Ironically, the Ninth Circuit already expressed how Congress would make such a limitation in *Trim v. Reward Zone USA LLC*, 76 F.4th 1157 (9th Cir. 2023), which is referenced in *Howard*. In *Trim*, the Ninth Circuit held that the text messages at issue did not qualify under the TCPA because "because they did not include audible components" which contrasted with Congress's use of the word "voice" in the statute at issue. 76 F.4th at 1158, 1160-61 (analyzing "the disputed term—'voice'" in the context of 47 U.S.C. § 227(b)(1)(A)). Thus, had Congress intended to eliminate textual communications from § 227(c)(5) it would have used the phrase "voice call," rather than "telephone call."

This Court should hold the same. Defendant's primary textual argument, that a "telephone call" must be limited to sound-based communications, fails on its own terms.

In further service of its sound-based theory, Business Capital argues that a "call" must be limited to auditory communications because, in its view, the term appears alongside words like "voice" and similar concepts elsewhere in the statute. But that argument rests on a flawed premise. The provisions in 47 U.S.C. § 227(b)(1)(A)–(B) do not define "call" at all; they regulate certain types of calls, including those made using an "artificial or prerecorded voice." *Id.* That phrase does not describe all calls but rather identifies one subset of prohibited conduct. The structure of the statute confirms this: Congress made it unlawful "to make any call" using certain technologies or methods, including but not limited to artificial or prerecorded voices. 47 U.S.C. § 227(b)(1)(A). Thus, the presence of "voice" in those provisions shows only that some calls involve sound, not that all calls must. If anything, the statute's phrasing demonstrates that "call" is the broader category, and "voice" describes just one type within it.

Business Capital's argument also cannot be squared with the statute's text as a whole. Congress did not define "call" in exclusively auditory terms. It elsewhere used broader language such as "call or message" when defining "telephone solicitation." 47 U.S.C. § 227(a)(4). That

32

broader phrasing confirms that the statute contemplates multiple forms of telephonic communication, not all of which are sound-based. Congress used general language capable of applying to later-developed technologies that inflict the same harms.

Defendant's parade of hypotheticals, emails, app messages, and push notifications, fails because those communications are not sent to a "telephone number" using a telephone network. The TCPA is specifically concerned with communications directed to telephone numbers, which uniquely intrude upon a device tied to a person's private life. Text messages fall within that category. Emails and app-based communications do not.

Finally, Business Capital's attempt to distinguish text messages on the ground that they lack sound ignores the very privacy interests the TCPA was enacted to protect. The statute targets unwanted intrusions into the home and personal sphere, and courts have consistently recognized that unsolicited text messages inflict the same nuisance and invasion of privacy as unwanted calls. A text message call, like a ringing phone, demands the recipient's attention, disrupts the use of the device, uses battery life, storage space, and network resources, and intrudes upon the recipient's seclusion. For that reason, treating text messages as "calls" under the TCPA does not create incoherence, it fulfills the statute's purpose.

In short, Defendant's interpretation cannot be reconciled with the TCPA's text, structure, or purpose. The ordinary public meaning of "telephone call" at the time of enactment encompasses any attempt to communicate by telephone, including text message calls, and nothing in the statute suggests that Congress intended to exclude the most common form of telemarketing communication today. Reading the statute as Defendant proposes would create internal inconsistencies, undermine the Do Not Call Registry's effectiveness, and allow precisely the type of privacy invasion Congress sought to prevent. The better, and correct, reading is the

one adopted by the Third and Ninth Circuits, the FCC, and the overwhelming weight of authority: unsolicited telemarketing text messages are "telephone calls" within the meaning of "the TCPA," which includes § 227(c).

### E. Any doubt that section 227(c) covers text messages should be resolved by deference to the FCC's longstanding interpretation.

The best reading of the statute is that the word "call" includes texts. But if there's any doubt about that, the FCC's interpretation should resolve it. That's because Congress expressly delegated authority to the FCC to "fill up the details" of the Do Not Call List rules. *Loper Bright*, 603 U.S. at 395. As a number of district court have held post-*Loper Bright*, section 227(c) "explicitly delegates such authority." *Skopos*, 2025 WL 2029274, at \*4; *see Mey v. Liberty Home Guard, LLC*, 2026 US Dist LEXIS 739, at \*15, \*19 (explaining section 227(c) "expressly delegated rulemaking authority" such that even "[u]nder *Loper Bright*," the FCC's interpretation is entitled to "deferential review"). So the FCC's longstanding reasonable interpretation of the word "call" should still carry the day. *See id*.

To be sure, mere statutory ambiguity is no longer automatic cause to defer to an agency. *See Loper Bright*, 603 U.S. at 412–13 (overruling *Chevron*). And district courts are not bound by the Hobbs Act to adopt FCC interpretations; they can and should make their own assessment of the statute. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.*, 606 U.S. 146, 152 (2025). Business Capital says this means no deference is permitted, so courts can now ignore the FCC's longstanding interpretation. But that's incorrect.

Sometimes "the best reading of a statute is that it delegates discretionary authority to an agency." *Loper Bright*, 603 U.S. at 395. Courts thus still afford deference to agency interpretations when a statute "expressly delegate[s] to an agency the authority to give meaning to a particular statutory term," tasks an agency "to fill up the details of a statutory scheme," or

34

tells an agency "to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility." *Id*. at 394–95. In that case, a court's role is merely to "fix[] the boundaries" of agency authority and ensure "reasoned decisionmaking" within them. *Id.* at 395; *see Pickens v. Hamilton-Ryker IT Sols., LLC*, 133 F.4th 575, 587–88 (6th Cir. 2025).

Section 227(c) is an express delegation of that sort. Congress didn't write the Do Not Call List rules itself. Instead, it tasked the FCC with evaluating alternative approaches based on (among other things) open-ended criteria such as "effectiveness in protecting … privacy rights" and "other advantages and disadvantages." 47 U.S.C. § 227(c)(1)(A). And it empowered the FCC to make rules "that *the Commission determines* are most effective and efficient to accomplish the purposes of this section." 47 U.S.C. § 227(c)(1)(E) (emphasis added). That confers discretionary authority to "fill up the details," using open-ended language that bestows "flexibility" to best effectuate the TCPA's goals. *Loper Bright*, 603 U.S. at 395; *see Hulce*, 132 F.4th at 497 n.1 (noting the FCC's "delegated authority" to make Do Not Call List rules). In the telecommunications context, especially, an express delegation like this one is evidence that Congress expected technology "to evolve and therefore charged the [FCC] with the continuing obligation to define it." *U.S. Telecom Ass'n v. FCC*, 825 F.3d 674, 718 (D.C. Cir. 2016). It follows that, if the statute doesn't resolve this question, Congress expected that the FCC would.

It therefore would honor Congress's intent to "respect [that] delegation" and accept the FCC's "reasoned decisionmaking" on this question. *Loper Bright*, 603 U.S. at 395, 413. Exercising its expressly delegated authority, the FCC has reasonably explained that prohibiting texts to numbers on the Do Not Call List "make[s] … enforcement easier" and "eliminate[s] any potential confusion in the industry." 38 FCC Rcd. at 12256–57 ¶¶ 26–27 & n.59. That conclusion aligns with the FCC's determination that cell phone numbers may be listed, and that the word

35

"call" confers protection from unwanted text messages in other TCPA contexts. *Id.* ¶ 27.

Moreover, the FCC has consistently adhered to that understanding of the word "call" for more

than two decades, dating back to the earliest years of the technology, when text messaging first

became common. *See* 18 FCC Rcd. at 14115 ¶ 165; 30 FCC Rcd. at 8020 ¶¶ 115–16 (July 10, 2015);

*Hernandez*, 2018 WL 6830220, at *1 ¶ 3 (Dec. 21, 2018). That conclusion is "reasonable and

reasonably explained," and therefore warrants deference. *Seven Cnty. Infrastructure Coal. v.

Eagle Cnty.*, 605 U.S. 168, 180 (2025).

Indeed, when *Chevron* applied, courts often deferred to the FCC's judgment about the

meaning of "call" in the TCPA. *See, e.g.*, *Satterfield*, 569 F.3d at 954 (granting the FCC *Chevron*

"deference to hold that a text message is a 'call' within the TCPA"); *Gager v. Dell Fin. Servs.,

LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013) (following *Satterfield*). After *Loper Bright*, there are

many cases where agencies' reasonable decisions are no longer entitled to deference, but this is

not one of them. The FCC's judgment about the status of text messages under its rules is as

worthy of deference now as it was then. *Skopos Fin.*, 2025 WL 2029274, at *4.

Relatedly, Business Capital says that an entirely separate provision distinguishes between

calls and text messages. Business Capital asserts that in 2018, Congress amended Section 227(e)

"to address spoofing and caller ID manipulation and expressly covered both 'a call made using a

voice service' and 'a text message sent using a text messaging service.'" As an initial matter, that

reading discounts the fact that Congress explicitly directed that nothing in section 227(e) "shall

be construed to modify, limit, or otherwise affect any rule or order adopted by the [FCC] in

connection with [the TCPA]." Consolidated Appropriations Act of 2018, 132 Stat. at 1094. That

includes the judicial decisions and FCC rules and orders that made clear that "call" in

section 227 includes "text messages." *See* 18 FCC Rcd. 14014, 14115 ¶ 165 (2003); *see, e.g.*,

36

*Satterfield*, 569 F.3d at 954.

As Judge Gettleman explained, this very action by Congress is an example of statutory

*stare decisis* in which Congress implicitly *endorsed* the prevailing view at the time:

> The term "telephone call" appears many times throughout § 227. In 2009, the Ninth Circuit held "that a text message is a 'call' within the meaning of the TCPA." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009). Relying on that line of precedent, the Supreme Court later stated in dicta that "[a] text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 157 (2016). . . .Although *Loper Bright* overruled *Chevron*, the *Loper Bright* Court held that its decision does not "call into question prior cases that relied on the *Chevron* framework. The holdings of those cases that specific agency actions are lawful ... are still subject to statutory stare decisis despite our change in interpretive methodology." . . . . Defendant correctly observes that Congress most recently amended the TCPA in 2018. The regulatory history and case law discussed above occurred prior to 2018. Thus, in 2018 it would have been known to Congress that the courts and the FCC were both consistently interpreting § 227(c) to include text messages.
>
> That Congress did not change anything about § 227(c) in the 2018 amendments can be read to represent exactly the opposite of what defendant advocates. In light of the regulatory history and case law that was known to Congress in 2018, Congress had the option to take affirmative action to exclude text messages from § 227(c)'s coverage. Congress did not do so. If Congress's inaction in 2018 is to be ascribed any meaning, the court interprets it as an acceptance of the existing case law and regulations that applied § 227(c) to text messages. This read on Congress's inaction is in harmony with the oft-repeated principle that statutory stare decisis is particularly strong, because Congress can change what the courts have concluded.

*Rabbitt*, 2026 WL 851279 at *3-4 (cleaned up). Other Courts have agreed. For example, the

District of Connecticut held just a few days ago that "the legislative history of the 2018

Amendments contains no evidence that Congress discussed the impact of the proposed

Amendments on § 277(c)(5) [sic] or considered the private right of action at all when it passed

the 2018 TCPA Amendments." *Wilson v. Easy Spirit, LLC*, No. 3:25-CV-112 (SFR), 2026 WL

884170, at *8 (D. Conn. Mar. 31, 2026); *Childrens Dental*, No. 2:25-cv-05238, ECF No. 25

("Congress expressly addresses its concerns about "*caller* identification information" to both

"voice" and "text" services. Thus, the face of § 227(e) further confirms our view that a "call" can

37

implicate a voice conversation or a text conversation.").

Alternatively, the FCC's interpretation should, at the very least, be accorded "great weight." *Loper Bright*, 603 U.S. at 388. The FCC's position is grounded in the agency's expertise, consistent across decades, and well-reasoned. Those are the hallmarks of agency action with the "power to persuade." *Id.*; *Skidmore v. Swift Co.*, 323 U.S. 134, 140 (1944). The FCC's longstanding and consistent interpretation of the word "call" is thus an "informed judgment" to which this Court can "properly resort for guidance." *Loper Bright*, 603 U.S. at 388 (quoting *Skidmore*, 323 U.S. at 139–40); *see Mona Lee*, 2025 WL 3275607, at *3; *Medvidi*, 2025 WL 2856295, at *3 (accepting the FCC's interpretation as evidence of "the plain meaning of the statutory text as it has been understood by consumers, the FCC, and courts since the TCPA's passage").

In short, whether viewed as the statute's best reading or as a reasonable interpretation entitled to deference or persuasive weight, the FCC's conclusion that text messages are "calls" confirms that Plaintiff's claims fall squarely within § 227(c).

## Conclusion

For all of the foregoing reasons, Defendant's motion to dismiss should be denied in its entirety. The TCPA's text, structure, purpose, and controlling precedent all confirm that text messages qualify as "telephone calls" under § 227(c) and therefore fall within the scope of the Do Not Call Registry and its private right of action. Defendant's contrary interpretation rests on atextual limitations, misreadings of the statute, and arguments that have been repeatedly rejected by Courts in this Circuit and elsewhere.

Dated: April 6, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.
Perrong Law LLC
2657 Mount Carmel Avenue
Glenside, Pennsylvania 19038
Phone: 215-225-5529 (CALL-LAW)
Facsimile: 888-329-0305
a@perronglaw.com

**CERTIFICATE OF SERVICE**

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

April 6, 2026

/s/ Andrew Roman Perrong
Andrew Roman Perrong, Esq.

39