**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEON WEINGRAD, individually and on behalf of a class of all persons and entities similarly situated,<br><br>      Plaintiff,<br><br>v.<br><br>BUSINESS CAPITAL LLC<br><br>      Defendant. | Case No. 2:25-cv-06344 |

**DEFENDANT BUSINESS CAPITAL LLC'S
REPLY IN SUPPORT OF MOTION TO DISMISS**

**Table of Contents**

I.     Section 227(c)(5)'s Use of "Telephone Call" Excludes Text Messages From the Private
       Cause of Action and Forecloses Weingrad's Theory ......................................................... 3

II.    Weingrad Avoids Section 227(c)(5)'s Text and Attempts to Rewrite "Telephone Call"
       Using Other TCPA Provisions...................................................................................... 9

III.   The TCPA's Treatment of Fax Communications and the ADA's Treatment of Voice
       Transmission Services Proves Business Capital's Point .................................................. 11

IV.    FCC Commentary and the TCPA's Purpose Cannot Expand a Private Cause of Action
       Congress Did Not Enact................................................................................................ 13

V.     Conclusion .................................................................................................................. 15

Weingrad's response confirms that it wants this Court to do exactly what the Supreme Court unanimously said it cannot do: update the TCPA to reflect changing technology. In the face of that conundrum, Weingrad misdirects. He misstates the Supreme Court's position on texts, while omitting its most recent pronouncement on the issue: that it hasn't "considered or resolved the issue" of whether texts are "any call" under Section 227(b), much less "telephone calls" under Section 227(c)(5). He then relies almost exclusively on Section 227(b) cases involving other sections of the TCPA with other, broader language. He cites dictionary definitions of terms not at issue here. But most of all, he does everything he can to distract from the elephant in the room: That Your Honor can "call" (verb) your law clerk in the next room by shouting does not make doing so a "telephone call" (noun) any more than texting her does. That was even more true in 1991 than it was today. Because "telephone call" had a fixed meaning in 1991 that didn't include text messages—as it still does today—that should end the matter.

Given the simplicity of the issue, it is unsurprising that no Supreme Court or Circuit Court decision has held what Plaintiff claims: that 227(c)(5)'s private right of action—limited to a person who receives more than one "telephone call"—extends to text messages. None. Weingrad's contrary suggestion rests on cases that addressed *different* language in a *different* section, a distinction that proves Business Capital's point. For example, the Ninth Circuit in *Howard* addressed the "any call" language in § 227(b)(1)(A)(iii), not "telephone call" in § 227(c)(5). *Howard v. Republican Nat'l Comm.*, 164 F.4th 1119 (9th Cir. 2026). As did *Campbell-Ewald*, *Dominguez*, and *Gager* (Opp. 8), each of which either assumed that texts qualify as "calls" under § 227(b) without any analysis or stated that point in dicta. *See* § I. Most of Weingrad's district court authorities, including those in this district, make the same analytically flawed move: they import § 227(b)'s broader "to make any call" *verb* analysis without deciding what § 227(c)(5)'s narrower *noun* phrase "telephone call" meant when Congress enacted the private remedy. This Court must give that different phrase a different meaning, so these authorities confirm, rather than rebut, Business Capital's point.

1

What remains is an almost even district court split on the proper definition of § 227(c)(5) after *McLaughlin*, with two of those cases now at the Sixth and Seventh Circuits—both on appeal from wins by the defendant. That split is not resolved by counting decisions, particularly where numerous courts have come out both ways. It is resolved by applying the correct standard to the statutory term at issue to reach the analytically correct result.

That's what the Supreme Court did when it unanimously rejected the definition that dozens of courts (as well as the FCC) had erroneously adopted for the definition of "automatic telephone dialing system." That unanimous decision demonstrates the illogic of relying on the "domino effect" of in-circuit district court decisions, as Weingrad urges. The decisions in the Eleventh and Sixth Circuits are uniform in the other direction, but this is no more reason to agree with Business Capital than Weingrad's citation of in-circuit decisions here. What matters is the analysis.

If this Court performs that analysis and reads the relevant decisions on both sides, it will see that Weingrad's authorities reach the wrong result by using the verb definition of "call," importing § 227(b)'s broader "any call" cases, relying on passing commentary by the oft-reversed FCC that *McLaughlin* forecloses, or citing the TCPA's "general purpose" to reason that today's Congress likely would want to regulate texts. *See, e.g.*, Opp. 6–21, 35–38. Those arguments may support the view that texts are regulated somewhere within the TCPA (they are), or that Congress should do what multiple states have done and amend the TCPA (it should, for many reasons). But they do not answer the question *McLaughlin* and *Loper Bright* require this Court to decide independently: what did the noun phrase "telephone call" mean when Congress enacted the private cause of action under § 227(c)(5) in 1991?

The decisions that ask that question directly all point the same way: they read the phrase Congress actually wrote, apply contemporaneous definitions of that term, and give effect to Congress's different use of "telephone call," "any call," and "telephone call or message" in the same statute. Under that analysis, a "telephone call" in 1991 meant a voice communication by telephone, not a written text message. Mot. 4–5. *Irvin v. Sonic Indus. Servs., LLC*, decided after

2

the opening brief, reached that same conclusion in rejecting the same arguments Weingrad advances here. 2026 WL 1098403 (N.D. Ga. Apr. 20, 2026).

The TCPA's own structure confirms that this must be right, as do Plaintiff's own arguments. First, Congress regulated other non-voice communications over telephone lines—faxes—through an entirely separate regime that would be entirely redundant and conflicting if faxes were actually "telephone calls" all along. Second, the very same subsection of the TCPA that regulates automatic and pre-recorded calls uses "any call" when it intended to reach non-voice devices like pagers, and "telephone call" in the very next paragraph when addressing voice communications to residential landlines. Section 227(c)(5) uses "telephone call"—the voice term, not the broad one. Third, the ADA, enacted one year before the TCPA, built an elaborate relay infrastructure to *convert* text-based communications into voice (and vice versa) precisely because "telephone calls" are voice communications. So, the courts that agreed with Business Capital are not "ableist" (a nice way to say discriminatory) as Plaintiff claims: deaf persons who get an unwanted telephone call that is converted from voice to text can sue just the same as everyone else.

This Court should join those courts that have decided the issue correctly and in line with the Supreme Court's warning in *Duguid* not to modernize the TCPA by judicial activism. It should decline to pick sides based on geography and incorrect decisions that analyze different statutory terms not at issue here. It should grant Business Capital's motion.

## I.    Section 227(c)(5)'s Use of "Telephone Call" Excludes Text Messages From the Private Cause of Action and Forecloses Weingrad's Theory

Before turning to the text, the Court should be aware of what the Supreme Court and Third Circuit have—and have not—said about whether text messages are "calls" under the TCPA. Weingrad's heaviest citation is *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016), where the Court assumed without deciding that a text message "qualifies as a 'call'" for purposes of the "any call" provision of Section 227(b). Opp. 8, 13. But Weingrad omits what the Supreme Court said about whether texts are even "calls" under 227(b) just five years later. In *Facebook, Inc. v. Duguid*, the Court addressed *Campbell-Ewald* head-on: "Neither party disputes that the TCPA's

3

prohibition also extends to sending unsolicited text messages. *See Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016). We therefore *assume* that it does *without considering or resolving that issue*." 592 U.S. at 400 n. 2 (emphasis added). The Supreme Court has thus never held that a text message is a "call" under any provision of the TCPA. It has expressly reserved that question.

The same is true of the Third Circuit authority Weingrad invokes. Weingrad contends that the Third Circuit has "held that" "under the TCPA, that term encompasses text messages," citing *Dominguez v. Yahoo, Inc.*, 894 F.3d 116, 117 n.3 (3d Cir. 2018), and *Gager v. Dell Financial Services, LLC*, 727 F.3d 265, 269 n.2 (3d Cir. 2013). Opp. 16–17. But neither case involved § 227(c)(5) or the phrase "telephone call." Both arose under § 227(b)—the autodialer provision— where the operative phrase is the broader "to make any call." Neither court conducted any analysis of whether "telephone call" in § 227(c)(5) encompasses text messages. A footnoted assumption in a § 227(b) case is not a holding on the meaning of a different term in § 227(c)(5).

Turning, now, to what this case is actually about: Section 227(c)(5). That section gives a private right of action only to a person who has "received more than one *telephone* call" in 12 months. 47 U.S.C. § 227(c)(5) (emphasis added). As *James* explains, Mot. 2, Congress used "telephone call" there as a noun, not a verb. *James v. Smarter Contact, Inc.*, 2026 WL 879244, at *3 (M.D. Fla. Mar. 31, 2026). Yet Weingrad and the authorities he cites rely on the broader verb definition of "call"—"to communicate" or "to get into communication" by telephone—to argue that § 227(c)(5) reaches text messages. *Id.*; Opp. 9–11. Although Weingrad says one dictionary "defines a 'telephone call' as a 'call,'" Opp. 9–10, he cites no authority that supports the assertion. That is unsurprising, as a definition that reduces "telephone call" to "call" fails to give meaning to half the phrase. In any event, the relevant statutory phrase is not "call." It is "telephone call." It also ignores the modifying word "telephone," which must be given its ordinary 1991 meaning. *James*, 2026 WL 879244, at *3–4. The question, then, is not what "to call" may mean in the abstract, but what "telephone call" meant when Congress enacted § 227(c)(5).

Properly applied, the 1991-era noun definitions of the full statutory phrase resolve this case. Dictionaries from before and after the TCPA's enactment define the noun "call" as "an act

or instance of telephoning" or "the act of calling on the telephone." *James,* 2026 WL 879244, at *3 (quoting *The Random House Dictionary of the English Language* 297 (2d ed. 1987) and *Merriam-Webster's Collegiate Dictionary* 162 (10th ed. 1993)). The contemporaneous definition of "telephone" was equally narrow: "an apparatus, system, or process for *transmission of sound or speech* to a distant point," and "an instrument for *reproducing sounds* at a distance … one in which *sound is converted into electrical impulses* for transmission by wire." *Id.* (quoting *Random House* 1952 (2d ed. 1987) and *Merriam-Webster's Collegiate* 1211 (10th ed. 1993)) (emphases in original). See also *Stockdale v. Skymount Prop. Grp., LLC,* 2026 WL 591842, at *3 (N.D. Ohio Mar. 3, 2026) ("In 1990, Webster's Dictionary defined the noun 'call' as 'the act of calling on the telephone' and 'telephone' as 'an instrument for reproducing sounds at a distance...one in which sound is converted into electrical impulses for transmission by wire.'") (quoting *Merriam-Webster New Collegiate Dictionary* (9th ed. 1990)). Read together, those entries yield one answer: "a text message, which does not use a telephone to reproduce sounds at a distance, is not included or embraced in the ordinary public meaning of 'telephone call' from 1991." *James,* 2026 WL 879244, at *3; Mot. 4–5. "This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case." *Davis*, 797 F. Supp. 3d at 1273.

Weingrad's in-circuit district court authorities do not resolve the textual question presented here. *Newell v. RxLink Inc.* contains no substantive statutory analysis at all; it is a one-paragraph denial. No. 2:25-cv-04270, ECF No. 43 (E.D. Pa. Mar. 12, 2026).[1] In *Rubin v. Staples, Inc.*, the only § 227(c) issue before the court was whether the provision protects only "residential telephone subscribers." 2026 WL 881651, at *1 (D.N.J. Mar. 31, 2026). Although the court briefly concluded that a "telephone call" can encompass text messages, its analysis rested on premises that do not answer Defendant's textual argument here: the court treated § 227(b) cases as controlling, invoked purpose-based reasoning that *Facebook* rejects, and relied on pre-*McLaughlin* decisions that

---

[1] The court there likewise denied interlocutory review on the basis that issue would not be case-dispositive, even though the parties agreed it would. That is not the type of careful analysis required by *McLaughlin*.

assumed coverage without conducting an independent textual analysis. *Id.* at *4–5. That's the danger of dicta, and why courts generally only decide the questions briefed.

*Newell v. Children's Dental Health Associates* and *Cole v. C/T Install America, LLC* reached a different conclusion, but they illustrate the methodological problem *James* identifies. *Cole* acknowledged § 227(c)(5)'s phrase "telephone call," but resolved it by defining "call" as the verb "to get or try to get into communication by telephone." 2026 WL 916582, at *1–2. *Children's Dental* likewise relied on *Satterfield*'s definition of the verb "to call." 2026 WL 927378, at *4 (quoting *Satterfield*, 569 F.3d at 953) (emphasis added). But *Satterfield* did not interpret § 227(c)(5)'s private right of action or the noun phrase "telephone call." The "precise language at issue" there was § 227(b)(1)(A)'s broader phrase "to make any call," and the court relied on a 2002 dictionary to define the verb form. *Satterfield*, 569 F.3d at 953. As *James* explains, that distinction matters: § 227(c)(5) speaks in terms of receiving "telephone call[s]," not making "any call," and the modifier "telephone" must be given its ordinary 1991 meaning. 2026 WL 879244, at *3–4. The phrase referred to an act of telephoning through an instrument that transmitted or reproduced sound, not a written text message. *Id*. at *3.

*Children's Dental* and *Cole* do not resolve that narrower textual question. After defining "call" at a high generality, both decisions reason from § 227(b) cases interpreting "any call," § 227(a)(4)'s broader definition of "telephone solicitation," statutory purpose, and FCC guidance. *See Newell*, 2026 WL 927378, at *4–8; *Cole*, 2026 WL 916582, at *1–2. Nor do they account for the surplusage problem created by treating § 227(c)(5)'s "telephone call" as coextensive with § 227(a)(4)'s broader phrase "telephone call or message," or with § 227(b)'s broader call provisions. If "telephone call" already includes written messages, Congress's addition of "or message" in § 227(a)(4) does no independent work. To the extent *Children's Dental* and *Cole* rely on purpose or FCC guidance to bridge that textual gap, *Facebook*, *McLaughlin*, and *Loper Bright* require a textual analysis of the private right of action Congress actually enacted. Mot. 7–11.

*Dilanyan v. Hugo Boss*, one of Weingrad's principal authorities, supports Defendant's textual argument. The court found that "the ordinary meaning of 'telephone call'" excludes "text

6

message," that § 227(a)(4)'s "telephone call or message" language "undercuts Plaintiff's argument," and that *Satterfield* construed "a separate provision from § 227(c)(5)" only after "deferring under *Chevron*." 2025 WL 3549868, at *2–3 (C.D. Cal. Dec. 3, 2025). *Dilanyan* denied dismissal only because it viewed *Satterfield* as binding Ninth Circuit precedent. But *Satterfield* does not bind this Court. Nor do Weingrad's other cases, which almost universally trace back to *Satterfield* and fail to analyze the 1991 ordinary meaning of "telephone call" as a noun phrase.[2]

Weingrad's remaining authorities fall into four irrelevant categories: (1) § 227(b) decisions interpreting the broader phrase "any call" that never address § 227(c)(5)'s narrower "telephone call";[3] (2) DNC decisions that didn't involve text messages, or that only considered whether a communication was a "solicitation" or whether a number was "residential";[4] and (3) district-court decisions that pre-date *McLaughlin* or simply defer to the FCC or adopt its assumptions without independent textual analysis.[5] None of those decisions reads § 227(c)(5)'s noun phrase "telephone call" under *McLaughlin's* ordinary-meaning methodology.

Weingrad also abandons his own framework. He invokes *New Prime, Inc. v. Oliveira,* 586 U.S. 105 (2019), and concedes that "[t]o interpret a statutory term, courts look to the ordinary meaning of the word" at the time of enactment. Opp. 9. Yet he relies on a <u>2002</u> Webster's definition of "call" and a <u>2024</u> edition of Black's Law Dictionary to support his preferred reading. *See* Opp. 22 (citing *Webster's Third New International Dictionary* (2002)); *id.* at 28 (relying on, 2025 WL 2856295, which itself relies on the 2024 edition of *Black's Law Dictionary*). Where Weingrad

---

[2] *See, e.g.*, *Wilson v. Medvidi*, 2025 WL 2856295, at *2–4 (N.D. Cal. Oct. 7, 2025) (relying on *Satterfield* and a 2024 edition of Black's Law Dictionary); *Mujahid v. Newity, LLC*, 2025 WL 3140725, at *2–3 (N.D. Ill. Nov. 10, 2025) (relying on *Satterfield*'s § 227(b) analysis and a 2002 Webster's dictionary); *Wilson v. Better Mortg. Corp.*, 811 F. Supp. 3d 631, 637–41 (S.D.N.Y. 2025) (relying on *Satterfield*, § 227(b) authorities, purpose, and FCC guidance); *see also* Opp. 27-30.

[3] *See, e.g., Howard*, 164 F.4th at 1123; *Warciak v. Subway Restaurants, Inc.*, 949 F.3d 354, 357 (7th Cir. 2020); *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union,* 708 F.3d 737, 740 (6th Cir. 2013).

[4] *See, e.g., Hulce v. Zipongo Inc.*, 132 F.4th 493, 497 (7th Cir. 2025) ("The relevant issue for this appeal is Foodsmart's argument that the communications Hulce received fell outside the definition of 'telephone solicitation[.]'"); *Harriel v. Bealls, Inc.*, 2025 WL 2379617, at *2 (M.D. Fla. Aug. 15, 2025) (only issue was whether texts to cellphones, rather than residential lines, were covered).

[5] *Sagar v. Kelly Auto. Grp.*, 2021 WL 5567408 (D. Mass. Nov. 29, 2021); *Pepper v. GVG Cap. LLC*, 677 F. Supp. 3d 638 (S.D. Tex. 2023); *Hudson v. Palm Beach Tan, Inc.*, 2024 WL 4190513 (M.D.N.C. 2024).

does cite 1991-era sources, he cites only the <u>verb</u> form of "<u>call</u>," not the <u>noun</u> form of "<u>telephone call</u>." Opp. 9–10. By contrast, Business Capital's cases do exactly what *New Prime* requires: they consult contemporaneous dictionaries, focus on the full noun phrase "telephone call," and conclude that in 1991 the phrase referred to live voice communication. Mot. 4–7.

Weingrad's "vehicle" analogy (Opp. 1, 22) illustrates the flaw in his reasoning rather than supporting it. As Business Capital explained, "vehicle" is a category term defined by function: anything that transports people or goods. Mot. 5 & n.1. A Cybertruck shares that defining function, so it is a vehicle even though it did not exist when the statute was enacted. So is a flying car, even though they still don't exist. As Business Capital explained in its opening brief, "Telephone call" is not a category term. Its definition was fixed at enactment and remains so today. Then and now, it describes a specific type of communication—voice—transmitted by telephone. Expanding "telephone call" to include text messages is not like recognizing a Cybertruck as a vehicle. It is like calling an email a telephone call because it was sent from a smartphone.[6]

That is exactly the distinction *Wisconsin Central* draws. Weingrad invokes that case for the proposition that old text can find "new applications" as times change. Opp. 22, 28. But *Wisconsin Central* rejected the government's effort to stretch "money remuneration" to reach stock options because stock options did not share the defining feature of the category—they "were not then—and are not now—recognized as mediums of exchange." 585 U.S. at 284. The same exact logic applies here. Text messages do not share the defining feature of a telephone call—the transmission of sound—and so are not "telephone calls" however much technology has changed.

---

[6] Weingrad's reliance on *Taha v. Momentive Software, Inc.*, 2026 WL 974297 (C.D. Cal. Mar. 11, 2026), which reasoned that the modifier "telephone" adds nothing to "call" because "telephone" already appears in the dictionary definition of "call" (Opp. 31–32), gets the analysis backwards. Under *Taha*'s logic, "written message" does not exclude oral messages because 'writing' already appears in the dictionary definition of message. That's obviously wrong. The question is what "telephone" means. In 1991, it meant "an instrument for reproducing sounds at a distance." *Stockdale*, 2026 WL 591842, at *3. The modifier narrows "call" to voice communications made using that instrument. *Taha*'s suggestion that this reading would exclude voice calls from modern smartphones confuses the instrument with the communication. A voice call from an iPhone is a "telephone call" because the communication transmits sound. A text sent from an iPhone is not. The device is the same; the nature of the communication differs.

8

Congress knew how to use category terms when it wanted to. It used "any call" in § 227(b)(1)(A) in a way that made clear how broad that specific formulation was intended to be. It used "telephone call or message" in § 227(a)(4). It could have used "any communication" or "any contact." In § 227(c)(5), it chose "telephone call." That was not a category term awaiting new applications. It was a specific term with a fixed meaning. *See Facebook*, 592 U.S. at 404–05.

To this point, Weingrad never addresses *Facebook, Inc. v. Duguid*, the Supreme Court's most recent TCPA interpretation decision. 592 U.S. 395 (2021). That omission is telling. *Facebook* unanimously rejected an expansive reading of the TCPA that numerous lower courts had adopted to account for modern technology. In doing so, the Supreme Court held that, however "outdated" the statute may be, that is "no justification for eschewing the best reading" of the words Congress enacted. *Id.* at 409; *see also* Mot. 5. The same error drives Weingrad's reading here. He asks the Court to treat § 227(c)(5)'s "telephone call" as if Congress had written "any call," "any communication," "telephone call or message," or "text message." But *Facebook* instructs courts to "begin with the text," *id*. at 402, not to enlarge the TCPA's private remedies to keep pace with later technology.

The question before this Court is straightforward: what did "telephone call"—not "call" or "any call"—mean in 1991? The text, the contemporaneous dictionaries that define the full statutory phrase, and every post-*McLaughlin* decision applying the required ordinary-meaning methodology give the same answer. "Telephone call" means a voice call, not a text message. Mot. 4–7. Weingrad alleges only text messages. His § 227(c)(5) claim therefore fails.

## II.     Weingrad Avoids Section 227(c)(5)'s Text and Attempts to Rewrite "Telephone Call" Using Other TCPA Provisions

Because Weingrad cannot persuasively address § 227(c)(5)'s actual text, he instead substitutes broader terminology drawn from other TCPA provisions with different scopes. That includes § 227(b)'s phrase "any call" (Opp. 10), § 227(a)(4)'s "telephone call or message" (Opp. 32), and § 227(c)(3)(F)'s authorization for the FCC to regulate entities "making or transmitting a telephone solicitation" (Opp. 3–4). None of those provisions address the private right of action

9

Congress created for do-not-call claims under § 227(c), which applies solely when a plaintiff receives "more than one telephone call," and which is the only provision at issue here. Mot. 5–6.

Weingrad fails to address the established canon that "when Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous." *Naturopathica,* 2025 WL 2997759, at *2; *see also Irvin*, 2026 WL 1098403, at *4 n. 5 (canon against surplusage "counsels against treating 'telephone call' and 'telephone call or message' the same where Congress saw fit to use the two distinct terms"). He instead asks the Court to treat § 227(b)'s "any call" as interchangeable with § 227(c)(5)'s "telephone call" and to invoke a consistent-usage canon even though, by Weingrad's own admission, that only applies when Congress uses "*identical*" words. Opp. 31–32 (citing *Henson v. Santander Consumer USA Inc.*, 582 U.S. 79, 85 (2017)). The TCPA's damages structure confirms the textual distinction between the distinct sections. § 227(b)(3) imposes mandatory $500-per-violation liability for "any call" made with prohibited technology. § 227(c)(5), by contrast, requires receipt of "more than one telephone call within any 12-month period" before any recovery is available, and authorizes only "up to" $500 per violation. Congress designed two different remedial schemes. Treating "telephone call" in § 227(c)(5) as coextensive with § 227(b)'s "any call" would collapse them and erase the deliberate limitations Congress imposed.

Weingrad also redirects to § 227(a)(4)'s definition of "telephone solicitation"—which encompasses "a telephone call or message"—to claim that "telephone call" in § 227(c)(5) must likewise include both. Opp. 14–15. But § 227(a)(4) defines the universe of communications the FCC may regulate; it does not define the scope of the private right of action Congress chose to create. Those are different things, and Weingrad does not dispute that Congress routinely grants agencies broader regulatory authority than the private remedies it makes available to plaintiffs. It did so in the CAN-SPAM Act, *see Gordon v. Virtumundo, Inc.*, 575 F.3d 1040, 1048 (9th Cir. 2009); in the FTC's Telemarketing Sales Rule, *see* 15 U.S.C. § 6104(a); and in this very statute, where a single call violates the FCC's regulations but a private plaintiff cannot sue until receiving a second one. 47 U.S.C. § 227(c)(5). If anything, § 227(a)(4)'s broader "telephone call or message"

10

phrasing defeats Weingrad's reading rather than supporting it. If "telephone call" already encompassed written messages, Congress's addition of "or message" would do no work. The canon against surplusage forbids that result: "construing these distinct phrases identically would render superfluous the different terms Congress chose to use." *Irvin*, 2026 WL 1098403, at *4.

Weingrad's pager example further proves the same point. Opp. 11. Section 227(b)(1)(A) prohibits using specified technology "to make any call" to a list of enumerated telephone services, including "a paging service." 47 U.S.C. § 227(b)(1)(A)(iii). That enumeration effectively defines the scope of "any call": it necessarily reaches non-voice communications, because pagers in the early 1990s received numeric or text-based messages, not voice calls. Congress used the broadest available phrase—"any call"—and then defined it broadly by specifying that it covers communications to devices that could not receive voice at all.

The very next paragraph of the same subsection does something conspicuously different. § 227(b)(1)(B) prohibits "any *telephone* call to any residential telephone line using an artificial or prerecorded voice." (emphasis added). There, Congress switched from "*any* call" to "*telephone* call," and it did so in the precise context where the target—a residential landline—could *only* receive voice communications, not text messages. That is not a coincidence. Congress used "any call" when it intended to sweep in communications to devices that receive text, and "telephone call" when it was addressing voice communications to lines that receive only voice.

Section 227(c)(5) uses "telephone call"—the same narrow term Congress chose for voice communications to voice-only lines. It does not use "any call"—the broad term Congress chose when it wanted to reach pagers and other non-voice devices. That deliberate choice must be given effect, and it places § 227(c)(5) squarely on the voice side of the line Congress drew.

### III. The TCPA's Treatment of Fax Communications and the ADA's Treatment of Voice Transmission Services Proves Business Capital's Point

The TCPA's treatment of fax communications further confirms that "telephone call" does not encompass non-voice communications transmitted over telephone lines. In 1991, fax machines operated over the same telephone network and transmitted to the same telephone numbers as voice

11

calls. *See In re New Hampshire Elec. Co-op, Inc.*, 146 B.R. 890, 898 (Bankr. D.N.H. 1992) ("'[F]ax' machines allow persons to transmit correspondence and other documents through the telephone lines."). Yet Congress did not treat fax transmissions as "telephone calls." It regulated them separately in § 227(b)(1)(C), creating a distinct prohibition against sending "an unsolicited advertisement" to "a telephone facsimile machine," with its own scope, exemptions, and remedial structure. Congress later amended that fax-specific regime through the Junk Fax Prevention Act of 2005, Pub. L. No. 109-21, again without treating faxes as "telephone calls."

Critically, Congress enacted the JFPA at a time when text messaging was already mainstream in the United States and after the FCC had already opined in its 2003 Order that "call" includes text messages. 18 FCC Rcd. 14014, 14115 ¶ 165 (2003). Yet rather than extending § 227(c)(5)'s private right of action to text messages, or folding faxes into the existing "telephone call" provisions, Congress created yet another regulatory scheme for a non-voice telephone communication. Congress's decision not to extend § 227(c)(5) to text messages at a time when it was actively amending the TCPA, and was on notice of the FCC's 2003 interpretation, is the opposite of the implicit ratification Weingrad claims. *Cf. Rabbitt*, 2026 WL 851279 at *3–4 (N.D. Ill.) (relying on Congress's failure to amend § 227(c) as evidence of ratification).

If Weingrad's reading of "telephone call" were correct—that it encompasses non-voice communications transmitted via telephone, or to a telephone number—then faxes were "telephone calls" all along. That would mean Congress created an entirely separate and conflicting regulatory scheme for fax communications in § 227(b)(1)(C) without realizing they were already covered. And it would mean that a plaintiff who received two unsolicited fax advertisements could sue under both the fax-specific remedy in § 227(b)(3) *and* the do-not-call remedy in § 227(c)(5), with different triggering requirements, different damage standards, and different trebling thresholds. No one has ever argued that, because it makes no sense. Congress regulated faxes separately because faxes are not "telephone calls." Text messages are not either.

Congress does not create duplicative and internally inconsistent private remedies for the same conduct by accident. The only reading that avoids these conflicts is that Congress understood

"telephone call" to mean what it says: a voice communication by telephone. Faxes and text messages are not telephone calls. Congress regulated each form of communication through the specific provisions it chose, and this Court should give effect to those choices.

The ADA's use of "call" in 47 U.S.C. § 225 similarly supports Business Capital's reading, not Weingrad's. § 225 distinguishes between "voice transmission services" and "telecommunications relay services"—text-based communications that convert a text message into voice (or vice versa) through a relay operator so that deaf individuals can participate in telephone calls. *See* 47 U.S.C. § 225(a)(3), (b)(1). The entire relay service framework presupposes that a "telephone call" is a voice communication; the relay service exists precisely to bridge the gap between text-based input and the voice call it enables. In other words, Congress did not treat TTY transmissions as "telephone calls" standing alone—it created an elaborate relay infrastructure to translate them into telephone calls.

That distinction reinforces rather than undermines the ordinary meaning of "telephone call" as voice-based. Weingrad's characterization of *Davis*, *Jones*, and *Stockdale* as "ableist" (Opp. 23–26) is unfounded. Under Business Capital's (and those courts' reading), if a telemarketer places a telephone call to a deaf person, that deaf person still received a telephone call, and they could still sue under § 227(c)(5). And even if they couldn't, courts may not enlarge a private cause of action on policy grounds, however sympathetic. *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001).

## IV.    FCC Commentary and the TCPA's Purpose Cannot Expand a Private Cause of Action Congress Did Not Enact

Recognizing the textual difficulty, Weingrad pivots to four backup theories that distract from the main analysis. First, he asks this Court to defer to the FCC's interpretation that "call" includes texts. Opp. 35–37. *McLaughlin* makes clear that "a district court must independently determine for itself whether the agency's interpretation of a statute is correct[;] [d]istrict courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation." 606 U.S. at 155 (citing *Loper Bright*, 603 U.S. at 402). Under that framework, the

13

FCC's assumptions about § 227(c)(5) matter only insofar as they reflect the ordinary 1991 meaning of "telephone call." As the post-*McLaughlin* decisions confirm, they do not. Mot. 7–11. *CVS Pharmacy* is explicit: "even assuming that the FCC clearly defined 'telephone calls' as that term is used in Section 227(c)(5)" to include text messages, "'appropriate respect' for that conclusion would not require a different outcome" where the ordinary meaning of the statute says otherwise. 797 F. Supp. 3d at 1274 & n.1. And for good reason. As Weingrad conspicuously ignores, the FCC is a political body that has routinely been reversed on its "interpretation" of statutory terms under the TCPA. *See, e.g.*, *Ins. Mktg. Coal. v. FCC*, 127 F.4th 303, 315 (11th Cir. 2025) ("We thus reject the FCC's one-to-one consent restriction" as inconsistent with the statutory definition of "prior express consent"); *ACA Int'l v. FCC*, 885 F.3d 687, 695 (D.C. Cir. 2018) ("[W]e set aside the Commission's explanation of which devices qualify as an ATDS, as well as its understanding of when a caller violates the Act by calling a wireless number...").

Second, Weingrad's fallback—that § 227(c)(1)(A) and (E) constitute an "express delegation" surviving *Loper Bright* (Opp. 35–37)—conflates two separate provisions. § 227(c)(1) delegates to the FCC authority to design "regulations" governing the do-not-call list. § 227(c)(5), by contrast, is the private cause of action Congress itself created, with its own scope-defining language: "more than one telephone call." As *Davis* explains: "Congress can (and does) provide private rights of action narrower than its full breadth of regulation. The very provision at issue (§ 227(c)(5)) proves the point. It limits the private right to those who received two or more unwanted calls, even when a single call would violate the TCPA." 797 F. Supp. 3d at 1274. The two-call threshold appears nowhere in the underlying regulations. A single call violates 47 C.F.R. § 64.1200(c)(2)—but a private plaintiff cannot sue under § 227(c)(5) until receiving a second one. Congress drafted the private remedy with deliberate scope-narrowing language baked into the statute. The exclusion of text messages is another such limitation, not an inexplicable gap. As noted above, Congress routinely grants agencies broader regulatory authority than the private actions available to plaintiffs. Mot. 8–9. Courts must enforce that choice, not paper over it.

14

Third, Weingrad contends, through Judge Gettleman's *Rabbitt* opinion, that Congress's 2018 amendments to § 227(e) implicitly ratified an FCC view that "call" includes text messages. Opp. 36–38 (citing *Rabbitt*, 2026 WL 851279). *Blackstone* rejected the same move, explaining that plaintiffs there "cobble[d] together the FCC's 2003 Order and several later FCC Orders. . . with 47 C.F.R. § 64.1200(e) in an effort to establish that text messages apply under Section 227(c) of the TCPA," even though the 2003 Order "on its face. . . explicitly references only § 227(b)" and the later orders simply "refer back to the 2003 Order." 792 F. Supp. 3d at 900. The same flaw defeats Weingrad's argument here. In fact, the 2018 amendments cut the other way: Congress added § 227(e)(8), which expressly distinguishes "a call made using a voice service" from "a text message sent using a text messaging service," 47 U.S.C. § 227(e)(8)(A)–(B), and defined "text message" to exclude "a real-time, two-way voice . . . communication," *id.* § 227(e)(8)(C)(iii). Mot. 6–7. Congress's decision to leave § 227(c)(5) untouched, while expressly distinguishing between a "call" and a "text message" in other provisions, undercuts, rather than supports, ratification.[7]

Finally, Weingrad invokes the TCPA's privacy-protection purpose to argue that excluding texts would defeat congressional intent. Opp. 1–2, 15–17, 25–26. *Facebook* foreclosed that move, refusing to rewrite the TCPA to keep up with the times by elevating purpose over Congress's text. 592 U.S. at 404–05. And that has long been the rule: "[P]rivate rights of action . . . must be created by Congress;" "courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Sandoval*, 532 U.S. at 286–87. "Where, as here, the language of the statute is clear, the Court's analysis stops…. it is for Congress—not this Court—to fill those gaps in the wake of *Chevron*'s reversal." *Stockdale*, 2026 WL 591842, at *4.

## V.    Conclusion

For these reasons, the Court should grant Business Capital's motion to dismiss.

---

[7] Weingrad's related argument that the 2018 amendments' savings clause—providing that nothing in subsection (e) "shall be construed to modify, limit, or otherwise affect any rule or order adopted by the [FCC] in connection with" the TCPA (Opp. 36–37)—ratified the FCC's view that "call" includes texts is equally unavailing. The savings clause preserved existing FCC *rules and orders* from disruption by the new spoofing provisions. It says nothing about the meaning of "telephone call" in § 227(c)(5), and a general savings clause cannot sub silentio expand a private cause of action Congress chose not to amend.

DATED:  April 29, 2026

Respectfully submitted,

*/s/ E. Keith Emanuel*
E. Keith Emanuel (admitted *pro hac vice*)
Ryan D. Watstein (*pro hac vice* forthcoming)
Matthew B. Peters (*pro hac vice* forthcoming)
WATSTEIN TEREPKA LLP
75 14th Street NE, Suite 2600
Atlanta, Georgia 30309
Telephone: (404) 882-2394
ryan@wtlaw.com
kemanuel@wtlaw.com
mpeters@wtlaw.com

**McELROY, DEUTSCH, MULVANEY &
CARPENTER, LLP**
Matthew A. Lipman, Esquire
mlipman@mdmc-law.com
1617 JFK Boulevard, Suite 1500
Philadelphia, PA 19103
Telephone: 215-557-2900
Fax: (215) 557-2990

*Counsel for Defendant*

16

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 29, 2026, I caused to be electronically filed a true and correct copy of the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ E. Keith Emanuel*
E. Keith Emanuel

*Counsel for Defendant*
